RAYMOND L. GEOFFRION & another [1] *vs.* HECTOR LUCIER.

Hampden.    September 26, 1957. — December 18, 1957.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

Deceit.   Fraud.   Contract, For sale of real estate.

A duly executed contract for sale and purchase of real estate became immediately binding although it provided that it was "subject to being able to procure . . . [certain mortgages for part of the purchase price]; otherwise, if unable to procure said mortgages, the deposit will be returned and all obligations will cease." [536]

---

[1] His wife, Elenore K. Geoffrion.

In an action by a purchaser of real estate against a broker, where there was evidence that the defendant told the plaintiff that the property was owned by an estate and could be bought for a certain price, whereas in fact the defendant was not acting for the estate but had already arranged to purchase the property in the name of his son for a smaller price; that the plaintiff, knowing that the defendant's son was to take title, executed a binding sale and purchase contract for the larger price reciting that the defendant as agent for the estate was the seller; that the plaintiff then made a deposit and immediately began to make repairs of the property, and continued to do so for several months; that before the time for passing papers the plaintiff learned that the defendant's son had bought the property for the smaller price; and that the plaintiff at the time for passing papers took a conveyance from the defendant's son and paid the larger price, a verdict for the plaintiff for the difference between the two prices was warranted. [536–537]

CONTRACT OR TORT. Writ in the Superior Court dated June 16, 1953.

The action was tried before *Macaulay,* J.

In this court the case was submitted on briefs.

*Walter D. Raleigh,* for the defendant.

*Joseph E. Kerigan,* for the plaintiffs.

COUNIHAN, J. This is an action of contract or tort in which the plaintiffs seek to recover damages alleged to have been suffered by them because they had been fraudulently induced by the defendant to purchase a dwelling house numbered 46 Alderman Street in Springfield. There was a verdict for the plaintiffs and the action comes here upon the defendant's exception to the denial of his motion for a directed verdict. There was no error.

There was evidence that early in February, 1953, the male plaintiff, hereinafter called the plaintiff, went to the office of the defendant to inquire about the purchase of a house. He was shown this house on Alderman Street by an agent of the defendant. He was told that it was owned by the estate of one Ryan, deceased, and that the asking price was $8,900 but that the defendant could get it for him for $8,400. He was further told that he could get a mortgage of $6,000, that Mrs. Murray, a representative of the estate, would take back a second mortgage of $1,400, and that the plaintiff would only be required to pay the balance of $1,000 in cash

to acquire the property. In truth, however, the defendant was not acting as the agent of the Ryan estate but he had already through another broker arranged to purchase the property in the name of his son and agent, Rene Lucier, for $7,000. It appears that the plaintiff learned on or about February 7, 1953, that Rene was to take title to the property in his own name. Negotiations continued and on February 12, 1953, the plaintiffs signed a purchase and sale agreement. This agreement recited that the Springfield Real Estate Exchange (the name under which the defendant was doing business) acting as agent for Johanna Murray agreed to sell this property to the plaintiffs for the sum of $8,400 of which $1,000 was then deposited and the balance of $7,400 was to be paid upon delivery of the deed. It was further recited that it was "Subject to being able to procure a 1st mortgage in the amount of $6000.00 and a 2nd mortgage in the amount of $1400.00 to cover the balance; otherwise, if unable to procure said mortgages, the deposit will be returned and all obligations will cease."

On the day the agreement was signed the plaintiff began repairing the house and with the knowledge of the defendant continued to do so until the end of July, 1953. Rene Lucier took title to the property by a deed dated February 12, 1953, the day on which the agreement between the defendant and the plaintiffs had been executed. By agreement the time for passing papers was extended until May 15, 1953. Before the extended time elapsed the plaintiff learned that Rene had bought the property for $7,000. On May 15, 1953, the plaintiffs took title to the property, paying for it by the deposit of $1,000, a mortgage of $7,000 to a coöperative bank, and a second mortgage to Rene for $527.91. How this last sum was arrived at is not material.

During the negotiations and up to the time they took title the plaintiffs relied upon all the statements of the defendant concerning the property and the purchase thereof.

The plaintiff from February 12, 1953, when the agreement for purchase was executed up to the end of July, 1953, made repairs upon the property. He estimated the value of

materials used to be $600 and the value of his labor to be $600. The plaintiffs moved into the house on August 1, 1953, and occupied it until May, 1954. In June, 1954, they sold the house for $8,400. In this action they seek damages in the sum of $1,400 which they assert they were obliged to pay as the result of the misrepresentation of the defendant.

The fact that Rene told the plaintiff that he was to take title to the property in his own name is not necessarily inconsistent with the relationship of principal and agent which the defendant led the plaintiff to believe existed between the Ryan estate and the defendant. The deed to Rene was not enough to have put the plaintiff on guard or to indicate deceit or fraud on the part of the defendant. Such an arrangement might have been deemed wise for many reasons, one of which at least could have been convenience in passing papers.

We are of opinion that the case before us is governed by *Isenbeck* v. *Burroughs*, 217 Mass. 537. In that case the facts were similar to those in the case before us. It was said at pages 539–540, ". . . there were false and fraudulent representations made by the defendants of matters peculiarly within their knowledge, which bore directly upon the amount of the price to be paid by the plaintiff, and were precisely adapted to cause him a loss."

In *Kilgore* v. *Bruce*, 166 Mass. 136, at page 139, cited with approval in the *Isenbeck* case, it was said, "Ordinarily, in case of a sale procured by the vendor's deceit, the measure of damages is the difference between the actual value of the property at the time of the purchase and its value if the property had been what it was represented or warranted to be. . . . That rule is not applicable in the present case. There were no misrepresentations here as to the character or probable productive power of the things sold; but the purchaser was led by fraud to give more than the vendor would have been willing to accept, rather than lose the sale. In such a case the purchaser is injured, not by being led into a bargain which is bad in itself, but by being led into

a bargain which is less favorable than he might and otherwise would have obtained."

The defendant contends, however, that here the plaintiff discovered the fraud before the purchase and sale agreement became binding. He seizes upon the clause quoted from the agreement that in certain circumstances the deposit should be returned and all obligations of the parties should cease. He asserts that, because these conditions were not complied with until after the plaintiff learned how much Rene had paid for the property, the previous misrepresentations became immaterial. We do not agree. The agreement was binding from the moment it was executed subject only to becoming unenforceable in the event that certain mortgages could not be arranged. In that event the quoted clause "by apt language puts an end to the binding force of the contract." *Old Colony Trust Co.* v. *Chauncey*, 214 Mass. 271, 273. The case at bar differs from *Des Brisay* v. *Foss*, 264 Mass. 102, in which it appears that the plaintiffs had learned of the deceit before they accepted the defendant's offer of a unilateral contract.

However, in the instant case before the plaintiff learned of the misrepresentation he had partially executed the contract by making a deposit of $1,000 on the purchase price and had expended money in repairing the house.

The statement in the case of *Doujotos* v. *Leventhal*, 271 Mass. 280, at page 283, "It has been held that if a contract induced by fraud remains wholly executory when the fraud is discovered, no damage is suffered by the defrauded party who with knowledge of the fraud completes the contract," is not applicable to the instant case for here the contract had been partially executed when the fraud was discovered. It is significant that in the *Doujotos* case it was held that where a contract was partly executed when the fraud was discovered the plaintiff was not deprived of his action for the fraud. At page 284 it was said, "The agent was false to his trust. Immunity for fraudulent conduct of this kind should not in our opinion be extended so as to allow the defendant to escape responsibility for his fraud."

In the circumstances of the case at bar "Upon discovery of the fraud the plaintiff could have repudiated the contract or could affirm it and bring an action for damages." *Forman* v. *Hamilburg,* 300 Mass. 138, 142. See *Kabatchnick* v. *Hanover-Elm Building Corp.* 328 Mass. 341, 345.

*Exceptions overruled.*