MARK SOLOMON & another[1] *vs.* MARVIN BIRGER & another.[2]

Middlesex.    September 26, 1984. — April 22, 1985.

Present: BROWN, KASS, & SMITH, JJ.

Limitations, Statute of. *Practice, Civil,* Summary judgment. *Fraud,* Sale
   of real estate. *Real Property,* Sale. *Sale,* Real estate, Disclosure of
   defect. *Contract,* Sale of real estate, Merger, Performance and breach.
   *Merger. Deed,* Acceptance. *Warranty.*

Where the buyers of a dwelling house claimed that the sale eleven years
   earlier had been induced by the sellers' oral misrepresentations respecting
   the condition of the house, the buyers' cause of action accrued no later
   than the time at which they received an engineer's report disclosing that
   the house had a serious foundation defect, and the buyers could not
   escape the bar of the applicable three-year statute of limitations by
   claiming that their action, sounding in tort, was based upon their purchase
   and sale agreement which had recited that it was a "contract under seal."
   [637-640]
Any rights created by language in a printed form of agreement for the pur-
   chase and sale of a dwelling house providing that, at the time of con-
   veyance, the premises are to be "not in violation of . . . building and
   zoning laws" were merged into the deed from the sellers to the buyers
   and were thereby extinguished. [640-643] BROWN, J., dissenting.
Purchasers of a dwelling house who claimed they had been induced through
   fraud to accept a statutory form of quitclaim deed, a sealed instrument,
   were not entitled to the benefit of the twenty-year statute of limitations
   applicable to an action upon a sealed instrument. [643]

CIVIL ACTION commenced in the Superior Court Department
on August 7, 1979.

The case was heard by *Charles R. Alberti,* J., on a motion
for summary judgment.

*Edward Greer (Jeanne Baker* with him) for the plaintiffs.
*Michael R. Coppock* for the defendants.

---

[1] Pauline Solomon.

[2] Eleanor Birger.

KASS, J.  By complaint filed August 7, 1979, Mark Solomon and Pauline Solomon (the "buyers") alleged that on December 9, 1968, i.e., eleven years previously, Marvin Birger and Eleanor Birger (the "sellers") had induced them through misrepresentation to buy a defective house. A Superior Court judge entered summary judgment in favor of the defendant sellers.[3] This appeal followed. The basis urged by the defendants in favor of summary judgment was that the plaintiffs' action was long time-barred.

We summarize certain undisputed facts which we are able to deduce from a mass of affidavits, answers to interrogatories, responses to notices to admit facts, and depositions. The house in question is located at 104 Oldham Road, Newton, and was built in 1954, i.e., twenty-five years before this action was brought, by a home builder, Dorchester House Remodeling, Inc. Marvin Birger, one of the defendants, was the first buyer and resident owner. In 1959 Marvin Birger conveyed the property to himself and his wife as tenants-by-the-entirety. They continued to occupy the premises as their home until 1968, the year they sold the house to the plaintiffs.

On June 3, 1968, the Birgers, who were building a new home in Weston, placed their property for sale with a real estate brokerage firm. A broker from that firm took the Solomons through the house on June 22, 1968. There was no conversation of consequence between the prospective buyers and Mrs. Birger, who was at home during the tour. The Solomons were free to inspect the premises. About a month later, on July 5, 1968, the Solomons made a written offer to buy the Birger house for $36,000, an offer which the Birgers accepted. The offer form contemplated execution of a purchase and sale agreement and the parties, under date of July, 1968,[4] executed an agreement on the Greater Boston Real Estate Board

---

[3] The buyers had earlier filed a stipulation of dismissal of a claim against Abraham Zibit, the real estate broker in the transaction.

[4] If the day in July was ever filled in on the agreement form, it is not possible to make it out on the copy of the agreement which appears in the record. It is of poor quality but apparently the best which the sellers could produce. The buyers had no copy of the agreement at all.

form (1962 rev.). Once again, the record discloses no conversation of consequence between the buyers and the sellers, and, indeed, neither of the sellers was present when the Solomons signed the agreement.

Delivery of the deed occurred on December 9, 1968. During the interim, the Solomons made a number of visits to the house. On one such visit Mrs. Birger took a painter through the house to estimate painting work to be done. Above an archway leading to the bedrooms, the painter noticed a crack five feet long and about an eighth of an inch wide. "What is this crack?" he inquired. Mrs. Birger replied, "Oh, it is probably from sonic boom." Mrs. Solomon construed that remark as "kind of" facetious. That statement is the one upon which the plaintiffs have fixed as the Birgers' oral misrepresentation of the condition of the house.[5] There is no record of any other statement by the Birgers regarding the structural integrity of the house. So far as appears, neither the Solomons nor anyone on their behalf made a physical inspection, other than the walk through with the painter.

Within a few months after they moved in, Mr. Solomon discovered a large crack in the basement slab when he pulled back a rug. In 1970, the Solomons replaced a lower retaining wall, and, in 1973, they added a buttress wall at the rear of the house in an attempt to arrest movement of the back wall. In 1974, the Solomons noticed cracks in their front and rear foundation walls. There followed a series of consultations with engineers, contractors, and building consultants. One of the first of these, Tsiang Engineering, Inc., in 1975 reported that the house was settling because of, among other reasons, poor soil condition, horizontal soil pressure, poor fill material, and insufficient compaction of fill.

---

[5] The painter was a graduate student in the department of geological sciences at Harvard University, in which Mrs. Solomon worked. In a response to a notice to admit facts put by the plaintiffs, the Birgers deny the painter's question and the response attributed to Mrs. Birger. For purposes of considering the Birgers' motion for summary judgment, however, the question and answer must be taken as uncontested by the Birgers.

During the discovery phase of the case, the battle was fought over the buyers' charge that the sellers had misrepresented and concealed the condition of the premises. The plaintiffs have conceded that a tort claim based on misrepresentation is time-barred, even giving effect to the extension provision which G. L. c. 260, § 12, makes available in case of fraudulent concealment.[6] Rather, the plaintiffs urge two theories of recovery linked to the purchase and sale agreement, an instrument expressed by its terms as under seal, and upon which the plaintiffs argue they can, therefore, maintain an action within twenty years of the date the cause of action accrued. G. L. c. 260, § 1. The first of those theories is that the Birgers committed fraud in the inducement of the contract when Mrs. Birger made the "sonic boom" response to the painter's inquiry about the crack in the arch. A second theory relies on a clause in the contract which required delivery of possession of the premises "not in violation of . . . building laws."

1. *Fraud.* Actions for damages based on deceit sound in tort, a fact reflected in reported cases where the gravamen was that the plaintiff had been induced into a real estate transaction through the misrepresentation of a material fact by the defendant. See, e.g., *Sheffer* v. *Rudnick,* 291 Mass. 205, 205 (1935); *Forman* v. *Hamilburg,* 300 Mass. 138, 139 (1938) (wherein it is noted, however, at 142, that upon discovery of the fraud the plaintiff could have elected to rescind the contract); *Swinton* v. *Whitinsville Sav. Bank,* 311 Mass. 677, 677-678 (1942); *Kabatchnick* v. *Hanover-Elm Bldg. Corp.,* 328 Mass. 341, 342 (1952); *Fogarty* v. *Van Loan,* 344 Mass. 530 (1962) (whether action for breach of warranty will lie for oral representation of quality of real estate not decided); *Friedman* v. *Jablonski,* 371 Mass. 482, 483-484 (1976); *Nei* v. *Burley,* 388

---

[6] General Laws c. 260, § 12, has the effect of tolling the limitations period in cases of fraudulent concealment until the cause of action is discovered. At the latest, the Solomons were aware of a serious defect in the foundation of their house in August, 1975, when they received the Tsiang report (the report is dated August 12, 1975).

Mass. 307, 310 (1983); *Henshaw* v. *Cabeceiras*, 14 Mass.
App. Ct. 225, 225-226 (1982).[7]

If we were to apply to the normal statute of limitations of
three years[8] the extension which G. L. c. 260, § 12, affords,
the latest the plaintiffs could have brought a tort action was
within three years after they received the Tsiang report dated
August 12, 1975. From that report the plaintiffs learned that
their house suffered from a serious foundation defect, even if
they may have been uncertain of its precise extent and nature.
See *Mansfield* v. GAF *Corp.*, 5 Mass. App. Ct. 551, 555
(1977). It will be recalled that the plaintiffs did not file their
action until August 7, 1979. Conscious of that hurdle, the
plaintiffs, after substantial discovery, filed with the court an
election to abandon all actions other than those "based upon
contract under seal." They did not, however, opt for rescission,
a contract remedy that is available as an alternative to a tort
action for deceit, although generally in circumstances where
there has been only partial or relatively recent performance of
the contract. See *Forman* v. *Hamilburg*, 300 Mass. at 142;
*Geoffrion* v. *Lucier*, 336 Mass. 532, 537 (1957); *McMahon*
v. *M & D Builders, Inc.*, 360 Mass. 54 (1971); 12 Williston,
Contracts § 1523 (3d ed. 1970). Cf. *National Academy of
Sciences* v. *Cambridge Trust Co.*, 370 Mass. 303, 309 (1976).
Actions for rescission must be brought with reasonable prompt-
ness. 12 Williston, *supra*, § 1526, at 622. Cf. Restatement

---

[7] To be distinguished are cases, such as those relied upon by the plaintiffs,
which recognize a cause of action in contract by a buyer against a builder-
seller based on an implied warranty of habitability or an analogous theory.
See, e.g., *Duncan* v. *Schuster-Graham Homes, Inc.*, 194 Colo. 441, 442-
444 (1978); *Crowder* v. *Vandendeale*, 564 S.W. 2d 879 (Mo. 1978) (en
banc). Warranties of habitability are not normally implied in the transfer
of a home from one purchaser to a subsequent one. See *Crowder* v. *Vanden-
deale, supra* at 881-882; *Casavant* v. *Campopiano*, 114 R.I. 24, 26-27
(1974). Compare Roberts, The Case of the Unwary Home Buyer: The
Housing Merchant Did It, 52 Cornell L.Q. 835, 841-843 (1967); 12 Willis-
ton, Contracts §§ 1506A, 1523 (3d ed. 1970). Others of the plaintiffs' cases
involve equitable relief, e.g., *Wolford* v. *Freeman*, 150 Neb. 537 (1948)
(rescission), which if sought — as it was not here — would be subject to
equitable time limitations. See 12 Williston, *supra* § 1526.

[8] G. L. c. 260, § 2A, as amended by St. 1973, c. 777, § 1.

(Second) of Contracts §§ 164 and 380 (2) (1979). Rather, the plaintiffs argue that since the defendants' alleged misrepresentation served to induce the plaintiffs to sign the purchase and sale agreement as an instrument under seal, they may sue for damages on the basis of the misrepresentation at any time within twenty years of the performance of that contract.

An action on a written contract under seal enjoys a long statute of limitations because "the writing is clear evidence in permanent form of the terms of the agreement . . . ." 18 Williston, Contracts § 2020, at 678 (3d ed. 1978). A misrepresentation of the sort here alleged is not written into the agreement and such evidence as the plaintiffs proffer is entirely oral.

The ephemeral nature of unwritten representations and the natural tendency of persons to reconstruct history in a self-justifying manner are considerations which militate in favor of restricting the time in which an action may be founded on them. In choosing the correct limitations period we look to the essential nature of the action, not its form. *Hendrickson* v. *Sears,* 365 Mass. 83, 85 (1974). Here the essential nature is deceit. The plaintiffs' theory would stretch the limitations period far beyond the extension already worked in cases of fraudulent concealment by the remedial provisions of G. L. c. 260, § 12. It is a theory we do not endorse. Even were we to adopt the plaintiffs' reasoning, it would not help them. The asserted misleading statement was made several months after the parties signed the purchase and sale agreement and, therefore, could not have induced the plaintiffs to enter into the contract.

That the defendants failed to mention the house had developed cracks, including one in the basement obscured by floor covering, does not constitute fraudulent concealment. Homeowners who sell their houses are not liable for bare nondisclosure in circumstances where no inquiry by a prospective buyer imposes a duty to speak. *Swinton* v. *Whitinsville Sav. Bank,* 311 Mass. at 678-679. *Nei* v. *Burley,* 388 Mass. at 310-311. *Henshaw* v. *Cabeceiras,* 14 Mass. App. Ct. at 227. There must be some affirmative act of concealment of the cause of action. *Salinsky* v. *Perma-Home Corp.,* 15 Mass.

App. Ct. 193, 197 (1983). Compare *Kannavos* v. *Annino, 356* Mass. 42, 50 (1969).

2. *The building law clause.* It requires a very expansive, indeed, imaginative, reading of the complaint to find a statement of the claim based on the building law clause in the purchase and sale agreement. The complaint never mentions any clause of the purchase and sale agreement which purports to make a representation. Rather, paragraphs 11 and 12 of the complaint make only general allegations of warranty by the sellers, without reference to any writing. As the defendants have elected to meet the plaintiffs on substantive rather than pleading grounds, and in view of the liberal amendment provisions of Mass.R.Civ.P. 15, 365 Mass. 761 (1974), we consider the issue which the plaintiffs press. It is based on sections 4 and 9 of the purchase and sale agreement, which was, as we have said, prepared on the January 1, 1962, revision of the form published by the Greater Boston Real Estate Board.

Section 4 of that agreement calls upon the seller to convey a good and clear record and marketable title, free from encumbrances, except, among other things, provisions of existing building and zoning laws. Section 9, upon which the plaintiffs heavily rely, provides: "Full possession of said premises free of all tenants and occupants . . . is to be delivered at the time of the delivery of the deed, said premises to be then (a) in the same condition as they now are, reasonable use and wear thereof excepted, and (b) not in violation of said building and zoning laws. . . ." Into this latter section, i.e., § 9, the plaintiffs read a warranty by the sellers that the premises at the time of delivery of the deed will conform to the building code of the city of Newton. If the agreement so warrants, the materials submitted by the plaintiffs in opposition to the defendants' motion for summary judgment are sufficient to raise a question of fact whether at the closing between the parties a building code violation existed.[9]

---

[9] The applicable building code is not in the record. There is evidence in the record suggesting that when the house was erected in 1954, the building failed to comply with soil compaction standards prescribed by the code. At the time of the sale to the Solomons, the house was already fourteen years

We do not think that the purchase and sale agreement so warrants. Sections 4 and 9 of the agreement are interdependent. Section 4 deals fundamentally with the state of the title. It does so expressly and mentions building and zoning laws, party wall agreements, taxes, and betterments as aspects of title considerations. There is a blank subparagraph in which counsel tailoring the agreement may insert references to such things as easements. Under § 4, certain fundamental criteria for conveyance of title are established so that the buyer, between the time of execution of the purchase and sale agreement and delivery of the deed, can investigate what kind of pig is in the poke. If the buyer discovers a building or zoning law violation, the buyer may, under § 9, opt out of the agreement, unless the defect is cured in accordance with the provisions of § 10. Section 9 is not expressed in terms of warranty, but rather in terms of the conditions upon which the buyer may accept or refuse conveyance.

It is difficult to imagine that an agreement designed by a real estate association would contain a twenty-year warranty about a fact of which the seller is likely to have imperfect knowledge, i.e., whether his structure, at the time of sale, conforms in every respect with the building code. Whatever doubt might exist about the meaning of the agreement is, however, resolved by the merger provision which appears in § 13. That section is carefully drawn: "The acceptance of a deed by the Buyer or his nominee as the case may be, shall be deemed to be full performance and discharge of every agreement and obligation herein contained or expressed, except such as are, by the terms hereof, to be performed after the delivery of said deed." This language embodies the doctrine that acceptance of a deed ordinarily merges all obligations in the purchase and sale agreement, except those specified in the deed itself. *Pybus* v. *Grasso,* 317 Mass. 716, 717 (1945). *Snyder* v. *Sperry & Hutchinson Co.,* 368 Mass. 433, 441-442 (1975).

---

old. Lacking the code provisions, we do not know whether those provisions after a certain period of time bar the building commissioner of Newton from charging a code violation incident to the construction of a house that was built pursuant to a duly issued permit and duly inspected by the Newton building department during construction.

To this general rule, Massachusetts decisions have carved an exception given expression in *Lipson* v. *Southgate Park Corp.*, 345 Mass. 621, 625-626 (1963), *Holihan* v. *Rabenius Builders, Inc.*, 355 Mass. 639, 642 (1969), and *McMahon* v. *M & D Builders, Inc.*, 360 Mass. at 59-60. All three cases involve house builders, i.e., there was a separate agreement to construct or repair a building upon the premises to be conveyed. In those circumstances it was plausible to reason that the obligation to build was collateral to the undertaking to convey. It was also reasonable to suppose that a purchaser from a builder-vendor would rely on the contractor's possessing the skill to build a house which is habitable. For a discussion of illustrative cases, see 12 Williston, *supra,* § 1506A. In the case now before us there is no undertaking collateral to conveyance of the premises. The seller had no obligation to fix anything, to remove anything, or to add something. Nothing needed doing if the buyers decided, after investigation, that the conditions of conveyance had been met.

Moreover, the language of the merger clause in the agreement in this case is more carefully drawn than that considered in the *Lipson, Holihan,* and *McMahon* cases. The language in the instant case merges into the deed every agreement and obligation except "such as are, by the terms hereof, to be performed after the delivery of said deed." No provision appears in the agreement which by its terms calls for performance of an obligation after delivery of the deed. It is also worth noting that the form of agreement which the parties used was, unlike the form construed in the *Lipson, Holihan,* and *McMahon* line of cases, designed to cover the case of land with buildings on it. The sellers, who must surely have been surprised to be on the business end of a law suit eleven years after they passed a deed to their house, are entitled to the benefit of the language of their agreement.

That language, of course, has a purpose. The real estate market is unorganized in the sense that it has a vast number of individual buyers and sellers, some of whom participate in the market once or twice in their lives and move elsewhere thereafter. It is a market in which amateurs are the preponderant

players. See *Capezzuto* v. *John Hancock Mut. Life Ins. Co.,* 394 Mass. 399, 404 (1985). Buyers can — and well advised ones do — arrange for title searches and home inspections. They may also ask specific questions about the condition of the property, which sellers are bound to answer honestly. *Kannavos* v. *Annino,* 356 Mass. at 48. Once the transaction is completed, the parties are well served by being allowed to go their separate ways. This does not mean that sellers have a license to lie and cheat. If there have been misrepresentations, there is an adequate remedy in tort, and to the extent that the misrepresentation has been fraudulently concealed, the time for action is extended by G. L. c. 260, § 12, as well as by those cases which deal with the inherently unknowable. See and compare *Graveline* v. *BayBank Valley Trust Co., ante* 253 (1985). Beyond that remedy for misconduct, we do not think we should encourage persons to litigate about their leaking roofs, faltering furnaces, inadequate drainage, and cracking walls long after the fact.[10]

3. *The deed.* In a final effort to come within a twenty-year statute of limitations, the plaintiffs argue that they were induced by fraud to accept a deed, a sealed instrument. The deed delivered, however, was a short form quitclaim deed. See G. L. c. 183, §§ 8 & 11. Such a deed covenants no more than that the grantor conveys the premises free from encumbrances made by him. *Silverblatt* v. *Livadas,* 340 Mass. 474, 477-478 (1960). Mendler, Massachusetts Conveyancers' Handbook § 18.1 (3d ed. 1984).

The motion judge rightly concluded that, on the facts as to which there was no material dispute, the plaintiffs' action was time-barred. He correctly allowed the defendant's motion for summary judgment.

*Judgment affirmed.*

---

[10] There is a suggestion of what the Legislature considers appropriate public policy in this area of activity in G. L. c. 260, § 2B, as amended by St. 1973, c. 777, § 2. That statute precludes actions of tort "arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property" after six years following the completion of the work. See generally *Klein* v. *Catalano,* 386 Mass. 701 (1982).

BROWN, J. (dissenting). My quarrel is with part 2 of the majority opinion. I think the majority unwarrantably rewrites an agreement arrived at between equal bargaining parties. Unlike the majority, it is not difficult for me "to imagine that an agreement designed by a real estate association would contain a twenty-year warranty about a fact of which the seller is likely to have imperfect knowledge, i.e., whether his structure, at the time of sale, conforms in every respect with the building code." A simple disclaimer that no zoning or building code violations have been noticed or cited by local public officials would more than adequately insulate these defendants and all such similarly situated sellers. I would think that if any group were aware of the problem, it certainly would be the preeminent real estate association in the area.

But more to the point. The plaintiffs assert that the warranty in the purchase and sale agreement of building code compliance was violated because the house had been constructed on uncompacted landfill contrary to the local building code. I think that the instant case is controlled in all material respects by *McMahon* v. *M & D Builders, Inc.*, 360 Mass. 54, 59-60 (1971), which held that agreements which are not essential to the promise to convey do not necessarily merge with the deed, notwithstanding the existence of a merger clause in the accepted deed.

Notwithstanding the cogent analysis of the majority, I am of opinion that the present posture of the record does not lend itself to an immediate resolution of the merits, because the defendants' claims are, for the most part, inappropriate for determination in a summary judgment proceeding. See Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). The defendants admitted, pursuant to Mass.R.Civ.P. 36(a), 365 Mass. 795 (1974), that the purchase and sale agreement in the record is authentic and that it is a contract under seal. In their answer, they "admitted on information and belief" the allegation in the complaint pertaining to building code problems.[1] Section 9 of

---

[1] The defendants merely admitted that the building permit had been violated. Although it may be argued that it is not permissible to infer from an

the purchase and sale agreement appears to warrant that the building is in compliance with applicable local building codes.[2]

The buyers have demonstrated a prima facie claim for breach of a sealed instrument, and, as such, the claim is not time-barred. See G. L. c. 260, § 1. The buyers' claim would be barred only if (1) the warranty in issue was merged into the deed and thereby extinguished, superseded, or waived, or (2) the gravamen of the complaint is deemed exclusively to be fraud or some related tort which would be barred by the three-year statute of limitations, G. L. c. 260, § 2A.

As a general rule the contractual duties of a seller of land are discharged by the buyer's acceptance of a deed. However, "there is an exception to the effect that promises in the original agreement which are additional or collateral to the main promise to convey the land and are not inconsistent with the deed as given are not necessarily merged in the deed, but may survive it and be enforced after the deed is given." *McMahon* v. *M & D Builders, Inc.*, 360 Mass. at 59, quoting from *Pybus* v. *Grasso*, 317 Mass. 716, 717 (1945). See also *Rouse* v. *Brooks*, 66 Ill. App.3d 107, 110 (1978). In *McMahon*, the buyers sought to rescind a transaction because of false oral representations as to the quality of a nearly completed new house. The standard form purchase and sale agreement contained a provision that "[t]he acceptance of a deed by the Buyer shall be deemed to be a full performance and discharge hereof" (emphasis deleted). *Ibid.* This language was held "applicable only to the title . . . which was to be conveyed, and . . . the plaintiffs' acceptance of the deed operated as a merger or waiver only to the extent of precluding any claim that the title . . . did not satisfy the requirements of the agreement." *Id.* at 60.[3]

---

allegation of a violation of the building permit that the building code has not been complied with, the defendants have not controverted such a proposition or made it appear that there is no genuine issue for trial.

[2] The sellers do not take issue with the assertion that this clause exists.

[3] *McMahon* followed *Lipson* v. *Southgate Park Corp.*, 345 Mass. 621, 625-626 (1963), which found no merger or waiver where the contract of sale expressly provided for the construction of a new house in conformity with certain specifications, and *Holihan* v. *Rabenius Builders, Inc.*, 355

Promises concerning title and possession are essential to any conveyance, and consequently they are merged into the accepted deed. *Id.* at 59-60. On the other hand, promises that do not concern title or possession are collateral to the main agreement to convey and may be deemed not to have been merged into the deed.[4] *Ibid.* The warranty language expressed in § 9 of the purchase and sale agreement does not relate to title or possession — that is, it neither clouds the title nor prevents possession of the property. The warranty concerns the question of habitability. A promise that a house is suitable for habitation has been held not to merge into the deed. *Id.* at 57, 60.

Viewing the allegations in the complaint in conjunction with the express warranty language in § 9 of the purchase and sale agreement it becomes clear that the defendants were not entitled to summary judgment as matter of law.[5] The verified complaint

Mass. 639, 641-643 (1969), where, on facts substantially similar to those in *Lipson,* the same reasoning was applied and the same result was reached. Contrast *Pybus* v. *Grasso,* 317 Mass. at 717-719, where the merger doctrine was applied to a sale in which the buyer received a smaller lot than contracted for because "to hold the defendant for the missing land would be inconsistent with the deed, which described only lot 37." Similarly, *Snyder* v. *Sperry & Hutchinson Co.,* 368 Mass. 433, 440-442 (1975), applied the merger doctrine to bar a contract action where the property conveyed was encumbered by a lease for a longer period than specified in the purchase and sale agreement.

[4] That a house was warranted to have been constructed with building materials of only the highest quality is another example of a promise which may not necessarily be merged into the accepted deed.

[5] Although the code violation was brought to the court's attention, it does not appear that the plaintiffs ever specifically argued that the noncompliance with the code was a breach of an express warranty, except to the extent that such an argument was implicit in their contention that the defendants had not complied with the express and implied warranties during the period of negotiations and at the time of purchase. This, however, does not affect our resolution of this case. A judge hearing a summary judgment motion may consider the entire record properly before him, including parts not specifically referred to by either of the parties. See *Higgenbotham* v. *Ochsner Foundation Hosp.,* 607 F.2d 653, 656-657 (5th Cir. 1979), where the court noted that the counsel's failure to bring directly to the judge's attention a deposition filed in the record did not mean that the judge could properly ignore the deposition in ruling on a summary judgment motion. In short,

alleged that during the negotiation process and at the time of the acquisition of the premises the defendants made "express and implied warranties" to the effect that the house on the premises "was safe and fit for habitation and was free of major latent structural defects." Section 9 of the agreement would qualify as an express warranty made at the time of the acquisition of the property or during the period of negotiation. As the defendants' motion for summary judgment was not supported by affidavits, the requirements of Mass.R.Civ.P. 56(e), 365 Mass. 825 (1974), do not come into play and the plaintiffs' verified complaint can stand against the other documents filed in support of the motion. See *Enterprise Music & Games, Inc.* v. *McCarthy,* 9 Mass. App. Ct. 906 (1980).

The sellers' assertion that the local building code is not in evidence misses the point in this summary judgment proceeding. The sellers' contention that the building code issue was not raised below is specious; the code problem surfaces throughout the record. At the summary judgment stage the burden was on the defendants to establish that there was no issue of a building code violation.

I would reverse the judgment, vacate the order denying the plaintiffs' motion for partial summary judgment with regard to the defendants' statute of limitations contention, and remand the case to the Superior Court to stand for further proceedings.

rule 56 does not distinguish between material merely on file and that singled out by counsel for special attention. Contrast *S. Kemble Fischer Realty Trust* v. *Board of Appeals of Concord,* 9 Mass. App. Ct. 477, 478-479 & n.2 (1980).