Hely, J.
Introduction
The court will apply the summary judgment principles stated in Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711-16 (1991). The defendants are entitled to summary judgment because they made no false statement of fact or fraudulent nondisclosure and because the buyers agreed in the contract to accept the risk of any unknown defect in the septic system.
I. THE FRAUD AND MISREPRESENTATION COUNTS AGAINST THE THOMPSONS AND THE CLAIM OF A DUTY TO DISCLOSE
Count I of the plaintiffs’ Complaint alleges fraud or negligent representation against the Thompsons. Count I alleges that the Thompsons “knew or had reason to know of the existence of the illegal work" on the house’s septic system and that the Thompsons “failed to disclose the existence of the illegal septic system” in the negotiations culminating in the sale of the property. Count III, alleging negligent misrepresentation, adds that the Thompsons “knew or had reason to know that the Littauers would rely on the defendants’ certification of the condition of the septic system.” Count III alleges that the defendants were negligent in their “failure to advise the Littauers of the illegal septic system.”
In their affidavits in support of their motion for summary judgment, Mr. and Mrs. Thompson both state that they made no oral statement or representation of any kind to the plaintiffs regarding the septic system. The plaintiffs’ opposition to the Thompsons’ motion relies on two prior incidents relating to the septic system and contends that the Thompsons’ failure to disclose these two incidents amounted to tor-tious misrepresentation.
The first incident was a repair made by Robert Pape to a septic system pipe after it had been damaged by a truck. This occurred in 1986 or 1987, five or six years *440 before the sale of the house to the plaintiff. Mr. Thompson did not know if Mr. Pape had a permit for this work. John Thompson Dep. 31-36.
The second incident was Mr. Thompson’s observation of some dampness on the property in August or September, 1991, about eight months before the sale. Mr. Thompson Dep. 43-44. Mr. Thompson had an engineer come to the property and consulted with him about what would be involved if the system had to be changed or upgraded. Mr. Thompson took no further action on this, but he watched the area and did not observe any dampness after this. Mr. Thompson Dep. 44.
Mr. Thompson told the seller, Mrs. Thompson, about the second incident. The Court will assume for purposes of the summary judgment motions that Mr. Thompson’s knowledge about the first incident was also either communicated to Mrs. Thompson or should be imputed to her because Mr. Thompson was acting as her agent for this purpose. '
In asserting that there was a duty to disclose these events, the plaintiffs rely in part of the Seller’s Description of Property, a three page form signed by Mrs. Thompson as the Seller and read by the plaintiff, Thomas Littauer, as one of the buyers prior to the signing of the purchase and sale agreement. The Sellers Description has a list of fifty-eight questions about various aspects of the properly being sold. To the left of each question is a block where the seller checks off an answer of “YES,” “NO,” or “UNKN” (unknown). Question 27 asks “SEWAGE SYSTEM PROBLEMS? EXPLAIN” and is followed by a line and a half for explanation. This box has an “X" filled in indicating “UNKN[OWNJ” for this question. Mr. Thompson made the “X.” He testified that he told his wife that he had seen dampness six months earlier, and “I didn’t want to answer it ‘No’.’’ The plaintiffs further contend that Paragraph 36 of the purchase and sale agreement supports their claim that there was a duty to disclose the prior repair and prior dampness. In Paragraph 36 the seller agreed that the seller “will have the septic system serving the premises pumped and inspected; at the closing he will delivery a Septic System Certificate issued by the Cohasset Board of Health.”
In determining whether the seller had a duly to disclose the prior repair and dampness, the court must consider the parties written contract in its entirety. In the negotiations for this contract, both the buyers and the seller were represented by attorneys. The written contract consists mostly of the Greater Boston Real Estate Board Standard Form Purchase and Sale Agreement. The parties, however, modified the standard form in several places and added six additional paragraphs (31-36) contained in Rider A.
The acceptance-of-deed paragraph (13) and the two paragraphs on warranties and representations (25 and 32) have particular relevance to the plaintiffs’ claim of a duty to disclose. The acceptance-of-deed clause states that acceptance of the deed by the buyer “shall be deemed to be a full performance and discharge of every agreement and obligation herein contained or expressed, except such as are, by the terms hereof, to be performed after the delivery of said deed.” Paragraph 25, entitled “Warranties and Representations” states that the buyer “has not been influenced to enter into this transaction nor has he relied upon any warranties or representations not set forth or incorporated in this agreement or previously made in writing, except for the following . . .” In the space that followed the parties put “None.”
Paragraph 32 also refers to warranties and representations and expresses the buyers’ satisfaction with various systems including the septic system. Paragraph 32 states that the buyer agrees that the buyer “is purchasing the premises ‘as-is,’ without any warranties or representations, expressed or implied.” The buyer states that the buyer “has fully inspected the premises and is satisfied with the condition thereof... and is satisfied as to the working order of all mechanical, electrical, heating, plumbing, septic and other systems and services in the premises, as of the date of the inspection.” Paragraph 32 further states that except as provided in Paragraph 36, buyer “agrees that SELLER shall have no obligation or liability to BUYER with respect to compliance with health or environmental laws or regulations, or any other laws, regulations or requirements with respect to said premises or the occupancy thereof.” The final sentence in this paragraph states that the “provisions hereof shall survive delivery of the deed hereunder.”
Sellers and brokers “are not liable in fraud for failing to disclose every latent defect known to them which reduces materially the value of the property and of which the buyer is ignorant.” Nei v. Burley, 388 Mass. 307, 310 (1983); Swinton v. Whitinsville Savings Bank 311 Mass. 677, 678-79 (1942); Greenery Rehabilitation Group v. Antaramian, 36 Mass.App.Ct. 73, 77 (1994); Solomon v. Birger, 19 Mass.App.Ct. 634, 639 (1985). Homeowners who sell their houses “are not liable for bare nondisclosure in circumstances where no inquiry by a prospective buyer imposes a duty to speak.” Solomon v. Birger, supra. In this case there was no fiduciary duty between the seller and the buyers. They “dealt at arms length with each other and there was no particular duty to speak.” Nei v. Burley, 388 Mass. at 311. In the circumstances of this case, there was no legal duty on the Thompsons to disclose the repair of a broken pipe in 1986 or 1987. There is an absence of evidence in the summary judgment materials to support the claim that the Thompsons had knowledge that this repair was performed illegally or incompetently.
Similarly, the nondisclosure of the Thompsons’ knowledge of one dampness incident eight or more months before the signing of the purchase and sale agreement is no more tortious than the nondisclosure *441 of the seasonal stream in Nei v. Burley. In the absence of any evidence of a particular inquiry by the buyers or deceptive words or conduct by the seller, this nondisclosure “fails to reach the watermark of fraud.” Nei v. Burley, 388 Mass. at 310. In answer to the question “SEWAGE SYSTEM problems?,” the Thomp-sons did not answer “NO,” they answered “UNKNfOWN].” This was not a representation that there were no problems with the septic system. The nondisclosure of a single incident of odorless dampness eight months earlier “does not amount to fraud and is not a conventional tort of any kind.” Greenery Rehabilitation, supra, 36 Mass.App.Ct. at 77..
As noted earlier, the plaintiffs also rely on the seller’s promise in Paragraph 36 to have the system “pumped and inspected” and to deliver a Septic System Certificate issued by the Cohasset Board of Health." The plaintiffs argue that this imposed on the seller a duty to disclose the prior repair and the prior dampness. Paragraph 36 did not create such a disclosure duty. Under Paragraph 36, the seller had a duly to have the system pumped and inspected in accordance with the septic system certificate requirements of the Cohasset Board of Health. The same duly is imposed by the Board of Health regulation. There is an absence of evidence that the seller failed to comply with this duly. On the contrary, there is undisputed evidence in the Spirito Affidavit that the seller had an inspection performed by C. Spirito, Inc. and that the certificate and scope of the inspection performed by Spirito complied with the Board of Health regulation in effect at the time of the sale. Michael J. Spirito Affidavit.[1]
Assuming arguendo that the Spirito inspection certificate should be treated as a statement by the seller, there is an absence of evidence that any fact statement in this certificate is untrue. The inspection certificate makes no statement about the condition of the pipe from the septic tank to the leaching field. There is no evidence that Mr. Spirito’s above ground visible inspection discovered or reasonably should have discovered the diversion or breach in the pipe leading to the leaching field. There is no evidence that his inspection did not comply with the applicable Board of Health regulation. Michael J. Spirito Affidavit; Mark W. Corner Affidavit, Attachment G.
The Thompsons’ summary judgment position on the nondisclosure claim is further strengthened by the acceptance-of-deed clause and the specifically tailored “as-is” clause. As in Solomon v. Birger, 19 Mass.App.Ct. at 641-42, the buyers and seller agreed that acceptance of the deed “shall be deemed to be a full performance and discharge of every agreement and obligation” contained in the agreement except those obligations which by the terms of the agreement were to be performed after the delivery of the deed. The exception for houses sold by builders does not apply to this case. Solomon v. Birger, supra, 19 Mass.App.Ct. at 642. Similarly, the well-established Massachusetts exception for fraud (Bates v. Southgate, 308 Mass. 170, 173 (1941)) does not apply here because there was no misrepresentation of fact and no breach of any legal duty to disclose. Nei v. Burley, 388 Mass. at 310-11; Greenery Rehabilitation, 36 Mass.App.Ct. at 76.
The parties to this contract are likewise bound by the “as-is” clause that was negotiated with the assistance of their attorneys. In Paragraph 32, the buyers agreed that they were “satisfied as to the working order of all. . . septic and other systems and services in the premises.” The buyers further agreed that the seller shall have “no obligation or liability to BUYER with respect to compliance with health or environmental laws or regulations ...” Where there was no fraud or material misrepresentation of fact, these provisions in the contract are to be enforced according to their terms. Greenery Rehabilitation, 36 Mass.App.Ct. at 76-77.
Although Mr. Thompson was not the seller in this contract, this would not make him immune from tort liability for fraud or misrepresentation if he had communicated a false statement of material fact to the buyers while acting in an agency capacity for the seller. Neither Thompson made such a false statement or fraudulent nondisclosure, and it is for this reason that both are entitled to summary judgment.
II. THE UNJUST ENRICHMENT COUNT
On the undisputed evidence the Thompsons are likewise entitled to summary judgment on the plaintiffs’ claim alleging unjust enrichment. The concept of unjust enrichment as a basis for monetary damages generally applies in a situation of quasi contract or contract implied in law. See, e.g., Salomon v. Terra, 394 Mass. 857, 859 (1985). Typical examples are where a structure has been built or other valuable services have been performed in circumstances where the law imposes a duty to pay for the value of the work even without a contract. In the present case there was a contract and its terms are set forth in the terms of the purchase and sale agreement. The unconnected leaching field pipe was a defect unknown to either the seller or the buyers. A claim of unjust enrichment does not empower the court to rewrite the parties’ contract. The court cannot shift to the seller the risk of an unknown septic system defect where the buyers explicitly accepted this risk in Paragraph 32.
III. THE CLAIMS AGAINST C. SPIRITO, INC.
In Counts III through V, the plaintiffs allege that C. Spirito, Inc. committed negligent misrepresentation, negligence in the performance of its work, and unfair and deceptive acts in violation of G.L.c. 93A. There is an absence of evidence to support any of these claims against C. Spirito, Inc.
Spirito was hired by the seller to perform an inspection on the septic system “as required by the Town of *442 Cohasset in connection with the sale of the real property.” Michael J. Spirito Affidavit. Spirito’s affidavit states that the Town Board of Health only required a basic surface observation of the septic system, removal of the cover of the septic tank to observe the operating level, and snaking the main line to insure that no defect or clogging existed. If no problems were observed at this stage, a further inspection of the septic system was not required. Spirito Affidavit. Spirito personally performed the septic inspection in accordance with the requirements of the Town of Cohasset in effect at the time. The plaintiff points to no countervailing evidence to dispute any of these facts.
None of Spirito’s statements in the inspection form were false. Chapter 93A imposes “no liability for failing to disclose what a person does not know.” Underwood v. Risman, 414 Mass. 96, 100 (1993). There is no summary judgment evidence of any false statement, negligent work, or unfair or deceptive act by Spirito. See PMP Associates, Inc., v. Globe Newspaper Co., 366 Mass. 493 (1975).
ORDER
Summary judgment will enter for the defendants.

The Cohasset Inspection Form in use in 1995 has no apparent relevance to the 1992 sale in this case.