WILLIAM H. KELLEY, JR. *vs.* JOSEPH IANTOSCA[1]
& others.[2]

No. 09-P-1116.

Norfolk. February 5, 2010. - October 21, 2010.

Present: RAPOZA, C.J., McHUGH, & GRAHAM, JJ.

*Negligence,* Building contractor, Statute of repose. *Repose, Statute of. Real
Property,* Sale, Purchase and sale agreement, Deed, Merger. *Contract,*
Performance and breach. *Deed. Consumer Protection Act,* Unfair act or
practice. *Insurance,* Coverage.

A negligence claim brought by a plaintiff homeowner against a construction
company and its president, seeking damages arising out of the construction
of a home in the 1970s, was barred by the statute of repose contained in
G. L. c. 260, § 2B, which requires commencement of such a claim within
six years from the time the construction was substantially completed [150];
further, the plaintiff's misrepresentation claim was barred by the general
three-year statute of limitations for commencement of tort actions contained
in G. L. c. 260, § 2A, where the record showed unequivocally that the
plaintiff failed to commence the action until well more than three years
after he was on notice of the alleged misrepresentations [150-151].

A breach of contract claim brought by a plaintiff homeowner against a construc-
tion company (defendant), seeking damages arising out of the construction
of a home, was not barred by an express merger provision contained in the
purchase and sale agreement between the defendant and the plaintiff,
where the merger provision, read in context, applied only to claims of
defects in title and not in construction. [151-154]

In a civil action brought by a plaintiff homeowner against a construction
company and its president (defendants), alleging violations of G. L. c. 93A
arising out of the construction of a home in the 1970s, the six-year statute
of repose contained in G. L. c. 260, § 2B, barred those allegations that
focused on acts or omissions by the defendants during the construction
process, which were sufficiently tort-like to come within the ambit of
§ 2B [154], but did not bar those allegations concerning misrepresenta-
tions by the defendants, which contained genuine issues of material fact
rendering them unsuitable for summary judgment [154-155].

A trial court judge did not err in granting summary judgment in favor of an
insurer on a claim by a plaintiff homeowner, where the damage to the
plaintiff's house fell squarely within the exclusion set forth in the home-
owner's insurance policy. [155]

---

[1]Also known as Giuseppe Iantosca.

[2]Belair Construction Co., Inc., and Liberty Mutual Fire Insurance Co.

CIVIL ACTION commenced in the Superior Col rt Department on January 12, 2006.

A motion to dismiss was heard by *Patrick F. Brady*, J., and motions for summary judgment were heard by *Elizabeth B. Donovan*, J.

*Michael J. Lombardi* for the plaintiff.

*Thomas O. Moriarty* for Joseph Iantosca & mother.

*Ernest J. Palazzolo, Jr.*, for Liberty Mutual I ire Insurance Co.

McHUGH, J. In March, 1973, the plaintiff, V illiam H. Kelley, Jr., and his wife, Mary Ann Kelley, bought a house from the defendant, Belair Construction Co., Inc. (Be air). Joseph Iantosca, also a defendant, was Belair's presiden In 2006, cracks began to appear in the foundation of the house. / fter an investigation showed that the cracks were caused by th builder's use of improper subsurface fill, Kelley brought suit a gainst Belair and Iantosca to recover repair costs. Kelley als named Liberty Mutual Fire Insurance Co. (Liberty) as a defenc int, claiming that the foundation damage was covered by a hoi teowner's insurance policy Liberty had issued. Part of Kelley' s action was dismissed on a motion filed pursuant to Mass.F .Civ.P. 12(b)(6), 365 Mass. 754 (1974), and the remainder was ismissed on motions for summary judgment. Kelley appeals. ' /e affirm in part and reverse in part.

*Background.* When the complaint and the su nmary judgment record are read with the requisite indulgence,[3] t appears that in the early 1970s, Iantosca was a land developer nd the president of Belair. On June 30, 1972, Belair entered a p urchase and sale agreement (agreement) with Kelley and his wi e under which it was to build and sell to the Kelleys a house c i a lot in Braintree conforming to specifications attached tc the agreement. Iantosca signed the agreement as president f Belair. Belair

---

[3]See *Iannacchino* v. *Ford Motor Co.*, 451 Mass. 623, 536 (2008), quoting from *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 557 (2007 ("What is required at the pleading stage are factual 'allegations plausibly su gesting [not merely consistent with]' an *entitlement to relief, in order to* 're lect[] the threshold requirement of [Fed.R.Civ.P.] 8(a)(2) that the plain stater ent possess enough heft to sho[w] that the pleader is entitled to relief' "); *Att< ney Gen.* v. *Bailey*, 386 Mass. 367, 371, cert. denied, 459 U.S. 970 (1982) summary judgment record is viewed in the light most favorable to the nonmc 'ing party).

built the house and, after the Kelleys paid the agreed price, gave them a deed dated March 5, 1973.

One of the specifications in the agreement required Belair to remove from the site all trees that interfered with "construction of the dwelling, sewer, driveway and utility connections." Instead of removing at least some of the stumps and limbs of those trees, however, Belair buried them among some boulders on the site and then poured the foundation over the mixture. Over time, the organic materials beneath the foundation began to rot, and as a consequence, the foundation began to settle unevenly, cracking in the process.

Kelley first noticed the cracks in 2002 and hired a company with expertise in such matters to investigate. The investigation yielded a report dated February 17, 2002, stating, in essence, that the house was settling and cracking because the foundation had been built on unsuitable materials such as trees and other biodegradable matter, that further settling and cracking could be expected unless intervention occurred, and that the intervention could take a variety of forms, all of which would involve significant expense.

After receiving and digesting the report, and after unsuccessfully seeking Liberty's payment of the repair costs, Kelley brought suit against Iantosca, Belair, and Liberty on January 12, 2006. The complaint contains five counts, four naming Iantosca and Belair as defendants and the fifth naming Liberty. Insofar as Iantosca and Belair are concerned, Count I alleged breach of contract, Count II alleged misrepresentation, Count III alleged negligence, and Count IV alleged violation of G. L. c. 93A, the statute prohibiting unfair and deceptive practices in the conduct of a trade or business. The final count alleged that Liberty's refusal to acknowledge coverage for the problem amounted to an unfair insurance settlement practice prohibited by G. L. c. 176D.

Belair and Iantosca moved to dismiss the complaint pursuant to Mass.R.Civ.P. 12(b)(6). A judge of the Superior Court allowed the motion in part and denied it in part for reasons that will be described as we progress. Later, a different Superior Court judge ordered entry of summary judgment dismissing what was left of the case.

*Discussion.* We review the allowance of a motion under Mass. R.Civ.P. 12(b)(6), and the allowance of a motion for summary judgment, de novo. *Curtis* v. *Herb Chambers I-95, Inc.*, 75 Mass. App. Ct. 662, 666 (2009), *S.C.*, 455 Mass. 1108 (2010) (rule 12[b][6]); *Tompson* v. *Department of Mental Health*, 76 Mass. App. Ct. 586, 592 (2010) (summary judgment). Our review persuades us that considerable portions of the complaint were properly dismissed but that several of the claims require further exploration in the Superior Court.

1. *Claims for misrepresentation and negligence.* As noted, Count II of the complaint alleges misrepresentation against Iantosca and Belair and Count III alleges that the house had been constructed negligently. The judge allowed Iantosca's and Belair's motion to dismiss both counts, finding that the misrepresentations had not been pleaded with the specificity required by Mass.R.Civ.P. 9(b), 365 Mass. 751 (1974), and that the negligence claim merely "duplicated" the claim for breach of contract.

We think both claims were properly dismissed, although for different reasons. See *Hawthorne's, Inc.* v. *Warrenton Realty, Inc.*, 414 Mass. 200, 210 n.6 (1993). The negligence claim is barred by the statute of repose contained in G. L. c. 260, § 2B, which requires commencement of a tort claim for damages arising out of design or construction of a building within six years from the time the building was substantially completed.[4] The statutory six-year period is absolute and is not extended by virtue of the "discovery rule" applicable in other contexts. See *Sullivan* v. *Iantosca*, 409 Mass. 796, 798 (1991).

The misrepresentation claim is not necessarily governed by G. L. c. 260, § 2B, see *id.* at 799, but as Iantosca and Belair argued in the Superior Court, the claim is subject to the general three-year statute of limitations for commencement of tort

---

[4]In pertinent part, the statute provides that actions "of sort for damages arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property . . . shall be commenced only within three years next after the cause of action accrues; provided, however, that in no event shall such actions be commenced more than six years after the earlier of the dates of: (1) the opening of the improvement to use; or (2) substantial completion of the improvement and the taking of possession for occupancy by the owner." G. L. c. 260, § 2B. as amended through St. 1984, c. 484, § 53.

actions. See G. L. c. 260, § 2A. The three-year period is subject to the discovery rule, see *Patsos* v. *First Albany Corp.*, 433 Mass. 323, 328 (2001), but the record in this case shows unequivocally that Kelley was on notice of these defendants' alleged misrepresentations no later than February 17, 2002, when he received the report of subsurface deficiencies. Nevertheless, he did not commence this action until January 12, 2006, more than three years later.

2. *Claim for breach of contract.* The first Superior Court judge dismissed the contract claim against Iantosca individually on the ground that the relevant contract was between Belair and Kelley, not between Iantosca and Kelley. Kelley does not dispute that portion of the disposition.

The second Superior Court judge allowed summary judgment on the claim against Belair on the ground that any contractual obligation Belair may have undertaken was merged in the deed Kelley accepted from Belair after construction was finished. In so ruling, the judge, no doubt guided by Belair's arguments, pointed to an express provision of the purchase and sale agreement stating that "[t]he acceptance of a deed by the Buyer shall be deemed to be a full performance and discharge hereof."[5]

The quoted sentence, however, is the last sentence in a section of the purchase and sale agreement entitled "DEFECT IN TITLE," the remainder of which reads as follows:

> "Either party may have sixty (60) days to cure any defect found in the title. If the Seller shall be unable to give title or make conveyance as stipulated, any payments made under this Agreement shall be refunded, and all other obligations of either party hereunto shall cease."

Context, therefore, suggests that acceptance of a deed acknowledges the buyer's satisfaction with title, not his satisfaction with construction.

Reading the sentence in that limited fashion is consistent with decided cases, of which *McMahon* v. *M & D Builders, Inc.*, 360

---

[5]Neither here nor in the Superior Court did either party assert that the contract claim was barred by the six-year statute of limitations found in G. L. c. 260, § 2. We express no view on the statute's applicability to this case or whether the defendants waived it.

Mass. 54 (1971) (*McMahon*), is a leading example. In that case, the same sentence appeared in the same context in a purchase and sale agreement for land and a house the seller was to build. *Id.* at 59. The court held that the sentence applied only to defects in title and did not bar an action to rescind the agreement because of alleged oral misrepresentations about the quality of materials used to build the house. *Id.* at 60.

In reaching its decision, the court relied on three earlier decisions, *Pybus* v. *Grasso*, 317 Mass. 716 (1945) (*Pybus*); *Lipson* v. *Southgate Park Corp.*, 345 Mass. 621 (1963) (*Lipson*); and *Holihan* v. *Rabenius Builders, Inc.*, 355 Mass. 639 (1969) (*Holihan*), all of which offer guidance for this case as well. *McMahon*, *supra* at 59-60. In *Pybus*, the court quoted the Restatement of Contracts § 413 (1932) for what it characterized as the general rule that "[t]he acceptance of a deed of conveyance of land from one who has previously contracted to sell it, discharges the contractual duties of the seller to the party so accepting except such as are embodied in the deed." 317 Mass. at 717. The court went on to note, however, that there is an exception to the general rule "to the effect that promises in the original agreement which are additional or collateral to the main promise to convey the land and are not inconsistent with the deed as given are not necessarily merged in the deed, but may survive it and be enforced after the deed is given." *Id.* at 719.

The claim in *Pybus* had to do with an alleged defect in the seller's title to the property, so the exception was inapplicable. In *Lipson* and *Holihan*, however, the exception was the basis for the decisions. In both cases, the purchase and sale agreement required conveyance of real estate and construction of a house. The buyer's claims had to do with alleged defects in the house, not with deficiencies in title to the real estate. In *Lipson*, that difference was critical. As the court explained,

> "[a] provision in a contract as to title and possession will usually be merged in an accepted deed. However, the provisions imposing an obligation upon the defendant to erect a dwelling were so far collateral to the undertaking relating to title and possession, as to indicate that the omission of these provisions from the deed was without an intent to preclude their survival. Unlike the *Pybus* case, there was nothing in the collateral undertaking which was inconsistent

with the deed. The deed merely conveyed the premises but it did not constitute performance of an agreement which provided for the erection of a building 'in a careful, workmanlike and substantial manner' and the use of 'new and . . . best' materials in its construction."

345 Mass. at 625-626.

The same approach produced the same result for the same reasons in *Holihan*, where the court ruled that

> "the doctrine of merger or waiver by acceptance of the deed . . . applies to defects in the conveyance itself, such as failure to convey all the area contracted for as well as to defects in the title . . . [and that] [t]he statement in the purchase and sale agreement . . . that 'the acceptance of a deed and possession . . . shall be deemed a full performance and discharge hereof' does not change this result. It can have no effect on the building contract."

355 Mass. at 642-643.

We think that those cases dictate the outcome here. The agreement between Kelley and Belair, like the agreements at issue in *Holihan* and *McMahon*, was "a simple printed form of agreement commonly used for the purchase and sale of real estate. It was not specifically drafted for, or intended for use in a case of the sale of a lot with a house to be built or completed thereon." *McMahon*, 360 Mass. at 60. The relevant contractual language is identical and the factual allegations are virtually indistinguishable. See *Albrecht* v. *Clifford*, 436 Mass. 706, 716-717 (2002). As a consequence, merger was no bar to an action for breach of the construction contract.

Iantosca and Belair seek to distinguish *Lipson, supra*, and *Holihan, supra*, on grounds that in both cases work remained to be done on the houses after title passed and here there was no remaining work. That is the proverbial distinction without a difference, for in neither case did the court's analysis have anything to do with remaining work. Moreover, it does not appear that any postconveyance work remained in *McMahon, supra*. Their reliance on *Solomon* v. *Birger*, 19 Mass. App. Ct. 634, 642 (1985), is simply misplaced, for we observed in *Solomon* that

> "the language of the merger clause in the agreement in

Kelley *v.* Iantosca.

this case is more carefully drawn than that considered in the *Lipson, Holihan,* and *McMahon* cases. The language in the instant case merges into the deed every agreement and obligation except 'such as are, by the terms hereof, to be performed after the delivery of said deed.' No provision appears in the agreement which by its terms calls for performance of an obligation after delivery of the deed."[6]

3. *The claim under G. L. c. 93A.* Count IV of the complaint alleges that Iantosca's and Belair's "surreptitious backfilling of Kelley's property with unsuitable soil-bearing materials and their representations to the contrary" amount to violations of G. L. c. 93A. To the extent that those allegations focus on acts or omissions Iantosca and Belair performed during the construction process, the claim is barred by the statute of repose, for although focusing on c. 93A, those allegations are sufficiently tort-like to bring them within the statute's ambit. See, e.g., *Beaconsfield Townhouse Condominium Trust* v. *Zussman,* 49 Mass. App. Ct. 757, 761 n.12 (2000); *Fine* v. *Huygens, DiMella, Shaffer & Assocs.,* 57 Mass. App. Ct. 397, 404 (2003) (statute of repose applies to c. 93A claims that are "tort-like in nature").

Different considerations apply to what Iantosca and Belair allegedly said about what they did. "Section 2B [of G. L. c. 260] grants protection to designers, planners, builders, and the like . . . . It does not do so for people who sell real estate." *Sullivan* v. *Iantosca,* 409 Mass. 796, 799 (1991). That case, like this one, concerned allegations that a foundation had been built on inferior biodegradable landfill.[7] Applying the quoted principle, the court held that § 2B did not bar the buyer's claim "to the extent that the seller of the house, but not its builder, is charged with deceit in the sale of the property" and did not bar any viable claim based on violation of the covenant of good faith and fair dealing. *Id.* at 799-800.

[6]Though Iantosca and Belair cited *Solomon,* they did not mention what was for them the obviously troublesome portion of the opinion just quoted. For his part, the plaintiff purported to quote a passage from *McMahon, supra,* that the opinion itself does not contain. Both sides would do well to reread Mass. R.Prof.C. 3.3, 426 Mass. 1383 (1998).

[7]Indeed, Iantosca, individually and as trustee of a real estate trust, and Belair were the defendants in that case.

The decision in *Sullivan* is fully applicable here. Thus, while G. L. c. 260, § 2B, bars any claim arising out of what Iantosca and Belair did when they built the house, it does not bar claims under G. L. c. 93A arising out of misrepresentations they made about what they did. And, while Iantosca may have been acting as an employee of Belair when he made any alleged misrepresentations, he may nonetheless be personally liable for the consequences. See *Nader* v. *Citron*, 372 Mass. 96, 102-103 (1977). The record does not eliminate any genuine issue of material fact surrounding the alleged misrepresentations, see *Smith* v. *Massimiano*, 414 Mass. 81, 85-86 (1993), and thus summary judgment dismissing Count IV in its entirety should not have been granted.[8]

4. *The claim against Liberty.* Finally, by its terms, the homeowners policy Liberty issued to Kelley excluded "loss . . . [c]aused by . . . [s]ettling, shrinking, bulging, or expansion, including resultant cracking, of pavements, patios, foundations, walls, roofs or ceilings." It is crystal clear from the record that the damage to Kelley's house fell squarely within the exclusion. Liberty, therefore, was fully justified in its denial of coverage, and summary judgment was rightly granted in its favor.

Those portions of the judgment dismissing the contract claim contained in Count I of the complaint against Belair on the ground that that claim had merged in the deed, and dismissing Count IV of the complaint to the extent that it alleged misrepresentations or deceit by Iantosca or Belair, are vacated, and the case is remanded to the Superior Court for further proceedings consistent with this opinion. In all other respects, the judgment is affirmed.

*So ordered.*

---

[8]Claims under c. 93A are subject to a four-year statute of limitations, see G. L. c. 260, § 5A, and Iantosca and Belair do not allege that that statute ran before the complaint was filed.