ERNEST H. HENSHAW & another[1] vs. GILBERT CABECEIRAS
& another.[2]

Bristol.  March 10, 1982. — July 23, 1982.

Present: HALE, C.J., CUTTER, & ARMSTRONG, JJ.

*Fraud.  Practice, Civil*, Summary judgment.

In an action by the buyers of a house against the sellers, summary judg-
ment was properly entered for the sellers on the count of the complaint
seeking to recover for fraudulent misrepresentation by the sellers with
respect to alleged seepage of water into the basement, in view of the
fact that the statements of the sellers on which the buyers relied could
not reasonably be characterized either as a representation that water
never entered the basement or as a concealment of the fact that water
had entered the basement on one occasion.  [227-229]

Statements by the buyer and the seller of real estate as to the condition of
a swimming pool on the premises, as set out in an agreed statement of
facts, warranted the inference that the pool was leaking at the time the
seller gave the buyer his assurances to the contrary, and thus it was er-
ror to order summary judgment on a count of the buyer's complaint
alleging fraudulent misrepresentation of the condition of the pool.
[229-230]

CIVIL ACTION commenced in the First Bristol Division of
the District Court Department on March 28, 1979.

On transfer to the Superior Court Department the case
was heard by *Taveira*, J., on a motion for summary judg-
ment.

*Thomas P. Gay* for the plaintiffs.

*Andrew Shabshelowitz* for the defendants.

ARMSTRONG, J.  The Henshaws purchased a house with a
swimming pool from the Cabeceirases in 1978 and there-
after brought this action against them.  The first two counts
sounded in tort for fraudulent misrepresentation and deceit,

---

[1] Charlene G. Henshaw.

[2] Eleanor Cabeceiras.

the first count having to do with the alleged seepage of water into the cellar and the second with leakage of water from the swimming pool and the collapse of the pool five months after the sale. The third count sounded in conversion of certain items, such as a pool cover and a range hood, worth in the aggregate, allegedly, one hundred seventy dollars. The case is before us on the plaintiffs' appeal from a judgment entered for the defendants under Mass.R.Civ.P. 56(b), 365 Mass. 824 (1974).

The parties submitted and the judge approved an anomalously entitled "Agreed Statement of Facts Pursuant to [Mass.R.A.P.] 8d," as amended, 378 Mass. 934 (1979). That document contains a detailed "statement of facts," which was apparently intended to be a substitute for the record which was before the judge at the time he acted on the motion for summary judgment. (Only parts of that record have been reproduced in the appendix. The plaintiffs' answers to the defendants' interrogatories, for example, and the defendants' depositions, for another, have been omitted.) The statement consists principally of facts which seem to be agreed to by all parties but also contains assertions or allegations by the parties, which are so labeled. In general, the parties appear to have been able to agree as to the specific content of the conversations which underlie the claims of misrepresentation but are not in agreement as to the actual experience of the defendants before the sale or the plaintiffs after the sale with the problems of water seeping into the cellar or water leaking from the swimming pool. In the circumstances we treat the statement as an agreed statement of the controverted and uncontroverted evidence which the parties put before the judge at the time he considered the motion for summary judgment, and we inquire whether on that state of the record the judge was warranted in concluding that the case presented no material question of fact for trial.[3]

---

[3] By focusing on the agreed statement of the record we disregard certain statements appearing in the counteraffidavit of Ernest Henshaw ("[T]he

The defendants were entitled to summary judgment in their favor on count 1. The agreed record states that "[a]t no time during [the various conversations between the parties before the sale] did the [p]laintiffs inquire as to whether or not the [d]efendants had experienced water seepage into the cellar. Neither of the [d]efendants . . . stated to the plaintiffs that they did not have a water problem. In fact, at no time was water ever directly discussed by the parties." It is settled that a homeowner who sells his house is not liable for bare nondisclosure where he is under no duty to speak. *Swinton* v. *Whitinsville Sav. Bank*, 311 Mass. 677, 678-679 (1942). *Spencer* v. *Gabriel*, 328 Mass. 1, 2 (1951). *Donahue* v. *Stephens*, 342 Mass. 89, 92 (1961).

The plaintiffs attempt to remove the case from the application of that rule on the basis of two statements made by Eleanor Cabeceiras. In one she asserted "that [she] and her husband enjoyed using the [area of the cellar referred to as the 'rumpus room'] year-round, especially during the winter months when they sat before the fire." In the other

---

defendants represented . . . that the house was in sound condition and . . . that the cellar . . . was free from any defects"; and "Our purchase was based upon numerous assurances by the [d]efendants that both the cellar and the pool were in sound condition") which are reproduced in the appendix but are not reflected in the agreed statement. We also disregard the assertion in the Henshaw counteraffidavit that "[u]pon talking with neighbors they informed me that the [d]efendants had in fact a problem with the pool leaking prior to our purchasing the premises," an assertion which could not properly have been considered upon a summary judgment motion in any event for the reasons stated in *Stanton Indus., Inc.* v. *Columbus Mills, Inc.*, 4 Mass. App. Ct. 793, 794 (1976), and *Great Barrington Sav. Bank* v. *Gens*, 8 Mass. App. Ct. 942, 943 (1979). The various depositions, affidavits, and answers to interrogatories which were before the judge at the time he acted on the motion for summary judgment have not been incorporated in the agreed statement of the record on appeal and are not properly relied on by the plaintiffs as part of the record. See Mass.R.A.P. 8(d) ("[T]he statement . . . as approved shall be retained in the lower court as the record on appeal. Copies of the agreed statement shall be filed as the appendix required by [Mass.R.A.P.] 18 [, 378 Mass. 934 (1979)]." Compare *Renda* v. *Gouchberg*, 4 Mass. App. Ct. 786 (1976). See also *Seibolt* v. *County of Middlesex*, 366 Mass. 411, 412 (1974), and *Ingersoll Grove Nursing Home, Inc.* v. *Springfield Gas Light Co.*, 7 Mass. App. Ct. 864 (1979).

the Henshaws asked about "an odor in the cellar area", and Eleanor Cabeceiras "stated that it was probably because the cellar had been closed up."[4] Neither statement can reasonably be characterized as an implied representation by the Cabeceirases that water had never, to their knowledge, entered the cellar, or as a concealment of the fact, which the Cabeceirases acknowledge (see n.4), that there had been some seepage of water into the cellar in the aftermath of the 1978 blizzard.[5] To be contrasted with this case is *Kannavos* v. *Annino*, 356 Mass. 42 (1969), where the plaintiffs had purchased from the defendants three single-family houses which had been converted into twenty-eight apartment units, despite a zoning ordinance which prohibited multi-family housing in the district. The defendants had specifically advertised the properties as rental units, and they knew that the plaintiffs were purchasing the houses for use as such. It was held that, in those circumstances, the finder of fact could properly conclude that the defendants had made implied misrepresentations concerning the lawfulness of the use and that they had concealed numerous zoning and building code violations in circumstances where the failure to disclose the whole truth was tantamount to an assertion that

---

[4] The second conversation took place September 2, 1978, while the Henshaws were moving their belongings into the house. The passing of papers took place two days later. There is no suggestion in the agreed statement that there was any water seeping into the cellar in September. The agreed statement does indicate that some water entered the cellar in the aftermath of the blizzard of 1978, when the Cabeceirases owned the house, and at some time in late December 1978, after the Henshaws had purchased it. The agreed statement contains no "specific facts," see Mass.R.Civ.P. 56(e), indicating the extent of the leakage, although it does indicate that the Henshaws "allege" that the problem was "serious," "making, according to the [p]laintiffs, the cellar unuseable." Nor does the agreed statement indicate the cause of the seepage, although it does indicate that between the time they purchased the house in September and the time they first experienced seepage in late December, the Henshaws installed some gutters and changed some drainpipes.

[5] The agreed statement indicates that the Cabeceirases claim to have had no experience with water in the cellar prior to the 1978 blizzard. It also states that there was no sump pump in the cellar.

there were no serious violations. Many authorities concerning deception by omissions or half truths are collected in the *Kannavos* decision at 48. They are distinguishable from the case presented by count one, which is more aptly analogized to the cases of bare nondisclosure cited above.

Summary judgment should not have entered, however, with respect to the second count. The agreed statement tells that "Mr. Henshaw inquired of Mr. Cabeceiras . . . whether he had experienced any problems with the pool either in leaking or otherwise. At that time Mr. Cabeceiras assured Mr. Henshaw that he had no problems with the pool and that it was in good and sound condition. When questioned by Mr. Henshaw as to numerous cracks in the cement surrounding the pool, Mr. Cabeceiras assured Mr. Henshaw that those were nothing to worry about. . . . Mr. Henshaw testified in his deposition that he noticed the pool leaking a few days after they moved in . . . [and] that he continued to add an inch or two of water every day from the time he noticed it leaking until it collapsed some four months later." From those statements, without reference to the assertions allegedly made by neighbors (see n.3), an inference may be drawn, based on the short period of time involved and the apparent absence of a change of conditions, that the pool was leaking at the time Cabeceiras gave his assurance to the contrary. Such a misrepresentation, whether innocent or otherwise, could be a basis for liability in tort. *McMahon* v. *M & D Builders, Inc.*, 360 Mass. 54, 58 (1971). *Snyder* v. *Sperry & Hutchinson Co.*, 368 Mass. 433, 444 (1975). The agreed statement also contains material which would support inferences that the leakage problem began at a later date and that the collapse of the pool may have been the result of the Henshaws' own negligence in dealing with that problem. The duty of a trial judge, however, on a motion for summary judgment "is not to conduct a 'trial by affidavits' (or other supporting materials), but to 'determine whether there is a substantial issue of fact.'" *Noyes* v. *Quincy Mut. Fire Ins. Co.*, 7 Mass. App. Ct. 723, 726 (1979), quoting *Norwood Morris Plan Co.* v. *McCarthy*, 295 Mass. 597, 603 (1936).

The third count is not referred to in the briefs, nor is relevant material alluded to in the agreed statement of the record on appeal. We have no basis for concluding that summary judgment was not properly given for the defendants on that count. See *Lawrence* v. *Falzarano*, 380 Mass. 18, 27 (1980).

If there was an abuse of discretion in the judge's hearing the motion for summary judgment when the defendants had failed to file and serve the brief required by Rule 9 of the Superior Court Rules (1974) until the day of the hearing, the matter was rectified by his rehearing the motion on the plaintiff's timely motion to vacate the earlier order, prior to which rehearing the plaintiffs were permitted to submit counteraffidavits.

The judgment is reversed as to count two, and the case is remanded to the Superior Court for trial on that count. The judgment is otherwise affirmed.

*So ordered.*