Doerfer, J.
Plaintiffs, Pete and Victoria Urman (collectively, “the Urmans”), brought this action against the South Boston Savings Bank (“the Bank”) for negligent infliction of emotional distress, fraud and deceit, and violation of G.L.c. 93A[1] in connection with the Urmans’ purchase of a home in Needham, Massachusetts. The defendant has now moved for summary judgment on all of plaintiffs’ claims. Plaintiffs have now moved for partial summary judgment on the G.L.c. 93A claim. For the reasons which follow, the defendant’s motion for summary judgment is allowed. The plaintiffs’ motion for summary judgment is denied.
BACKGROUND
For the purposes of this motion, the following facts are undisputed.
On or about September 10, 1990, the Bank held a foreclosure auction on the premises located at Unit R, 9 Hasenfus Circle, Needham, Massachusetts (“the property”) pursuant to a power of sale in a mortgage given by Edward M. Carens (“Carens") .[2] The Bank was the only bidder at the auction and acquired the property for $199,000. Subsequent to the foreclosure sale, the Bank listed the property for sale with Garden City Homes, Inc. d/b/a Century 21 Garden City Homes (“Century 21”).
*124 On or about November 30, 1990, the Urmans executed a Purchase and Sale Agreement with the Bank to purchase the property for $175,000. Century 21 and RE/MAX were the brokers for the sale. On or about December 27, 1990, the Urmans and the Bank held a closing at which time title to the property passed to the Urmans.[3] At the closing, the Urmans made a down payment of $17,500.00 to the Bank, and the Bank provided the Urmans with $157,500.00 in purchase money financing.
In August of 1989, the Massachusetts Department of Environmental Protection (“DEP”) had declared the “Crescent Road Site”[4] to be a “priority” site because of evidence that trichloroethylene (“TCE”) vapors[5] were entering the Hillside Elementary School (“School”) from contaminated groundwater flowing under the school.[6] The School was subsequently closed from Februaiy of 1990 through September of 1990 for clean-up purposes.
The Bank did not, at any time, inform the Urmans that there was TCE contamination in the vicinity nor that the contamination was being investigated by the DEP. The Urmans allege that the Bank’s failure to disclose this information constitutes fraud and a violation of G.L.c. 93A. The Bank asserts that it was only aware that the School was closed due to a “problem” which the Bank assumed was asbestos.[7] (O’Keefe Affidavit, ¶8). The Bank contends that it did not notify the Urmans of the School because the School had reopened two months prior to the closing. The Bank concedes that Carens told the Bank that he had difficulty selling the property due to a problem at the School. (O’Keefe Affidavit, ¶9.) However, the Bank alleges that it was never notified by Carens of any TCE problem in the neighborhood or at the property.[8] In fact, in May of 1991, the Urman’s home underwent air quality testing for TCE contamination and the DEP found that the property showed only minimal, non-dangerous levels of TCE.[9] The Bank therefore alleges that the Urmans cannot recover on their claims without a showing of actual exposure to TCE and consequential damages from that exposure.[10]
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassessov. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
I. Negligent Infliction of Emotional Distress
The Urmans allege that the Bank, through its sale of property located in the vicinity of a TCE contaminated neighborhood, negligently inflicted emotional distress on the Urmans. The Urmans seek to recover damages from the Bank for their fear of developing cancer and the attendant physical consequences of that fear.[11]
To recover for negligent infliction of emotional distress, a plaintiff must prove: “(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case.” Payton v. Abbott, 386 Mass. 540, 557 (1982). The Urmans rely on Sullivan v. Boston Gas Co., 414 Mass. 129 (1993), to support their contention that their alleged headaches and nausea are sufficient physical manifestations to establish a claim of negligent infliction of emotional distress.
In Sullivan, a natural gas explosion destroyed the plaintiffs’ house, while the plaintiffs watched the destruction from across the street. Id. at 130. The court found that, under the factual circumstances presented, the plaintiffs’ headaches and nausea were a sufficient physical manifestation of mental distress to survive a summary judgment motion. However, the court held that, in determining whether a plaintiff has established facts which support a claim for emotional distress, “the judge will use his or her discretion to evaluate the evidence keeping in mind that the overall goal is to determine whether the evidence sufficiently corroborates the plaintiffs claims of mental distress and to strike a balance between the fear of fraudulent claims and the danger that worthy claims will not be heard.” Id. at 138.
In contrast to the plethora of cases cited by the Urmans in which plaintiffs have recovered for emotional distress after being exposed to some form of contaminant, the Urmans have failed to establish that they have suffered any contamination by TCE. See Anderson v. W.R. Grace & Co., 628F.Supp. 1219, 1226 (D.Mass. 1986) (fear of contracting cancer after drinking contaminated water); Johnson v. West Virginia University Hospitals, 413 S.E.2d 889 (W.Va. 1991) (attack on police officer by patient with AIDS is compensable); Laxton v. Orkin Exterminating Co., 639 S.W.2d 431 (Tenn. 1982) (fear of harm after drinking water containing toxic chemicals compensable). In fact, DEP tests indicate that the Urman property contains only minimal, nondangerous levels of TCE. The Urmans allegedly suffer physical manifestations of anxiety over the possibility that they may contract cancer from the TCE contamination, the existence of which they have not yet been able to establish. Pursuant to Sullivan v. Boston Gas Co., the court cannot conclude that, in the absence of documented TCE contamination, the Urmans state a claim against the Bank for negligent infliction of emotional distress. See also Burk v. Sage Products, Inc., 7*17 F.Supp. 285, 287 (E.D. Pa. 1990) (plaintiff must show exposure to a disease-causing substance before he can recover for *125 anxiety or fear of contracting a disease which is known to be caused by that substance).
Even assuming arguendo that the Urmans could establish exposure to TCE, Massachusetts does not allow recovery for emotional distress damages for fear of future injury unless causally related to physical injury. Payton, supra at 544.[12] See Anderson v. W.R. Grace & Co., 628 F.Supp. 1219, 1228 (D.Mass. 1986). See Ball v. Joy Technologies, Inc., 948 F.2d 36 (4th Cir. 1991) (plaintiffs exposed to toxic chemicals could not recover for fear of future injury); Burk v. Sage Products, Inc., 747 F.Supp. 285 (E.D. Pa. 1990) (absent proof that paramedic was exposed to AIDS virus, he could not recover in a products liability action for his fear of contracting the disease). “To allow recovery of emotional distress damages for the mere possibility that plaintiffs may develop a disease would be precipitous.” Curran v. Massachusetts Turnpike Authority, 2 Mass. L. Rptr. No. 13, 260 (June 20, 1994). Awarding damages “on a mere mathematical probability would significantly under compensate those who actually do develop cancer and would be a windfall to those who do not.” Anderson, supra at 1232, quoting Arnett v. Dow Chemical Corp., Civil No. 729586 (Cal. Super. Ct., March 21, 1983).
Thus, the Urmans may not recover emotional distress damages for their concern that they or their child may suffer future injury as a result of any alleged, and certainly undocumented, TCE exposure. Accordingly, the Bank is entitled to summary judgment on the plaintiffs’ negligent infliction of emotional distress claim.
II. Fraud and Deceit
The Urmans allege that the Bank had a duty to disclose the existence of TCE contamination in the neighborhood. ‘To sustain a claim of misrepresentation, a plaintiff must show a false statement of a material fact made to induce the plaintiff to act, together with reliance on the false statement by the plaintiff to the plaintiffs detriment.” Zimmerman v. Kent, 31 Mass.App.Ct. 72, 77 (1991) (citations omitted) . “A misrepresentation is material if it is shown that the misrepresentation was one of the principal grounds, though not necessarily the sole ground, that caused the plaintiff ‘to take the particular action that the wrongdoer intended he should take as a result of such representations and that otherwise he would not have taken such action.’ ” National Car Rental System, Inc. v. Mills Transfer Company, 7 Mass.App.Ct. 850, 852 (1979), quoting National ShawmutBank v. Johnson, 317 Mass. 485, 490 (1945).
The Urmans argue the Bank’s failure to disclose is material, because if the Urmans had known of the TCE contamination in the neighborhood, they would not have bought the house. (Urman Affidavit II.) Materiality is determined with regard to a reasonable person standard. See Restatement (Second) ofTorts, §538.[13] The court is unpersuaded by the Urmans’ contention that a reasonable person would not buy a home in the vicinity of a former TCE-contaminated school, which had been subsequently reopened prior to the buyer’s acquisition of his home, when the home itself tested negative for any dangerous levels of TCE.[14] However, the court need not decide the Urmans’ fraud and deceit claim exclusively on the basis of the materiality of the information allegedly concealed.[15]
The Urmans have not alleged that the Bank made any affirmative representations regarding the property. Rather, the Urmans contend that the Bank is liable for its alleged failure to disclose its knowledge[16] of contamination in the neighborhood. However, “nondisclosure can be actionable only where there is a ‘duty’ to disclose” such as when the parties are in a fiduciary relationship.[17] Greenery Rehabilitation Group v. Antaramian, 36 Mass.App.Ct. 73, 78 (1994). It is well settled that a seller “is not liable for bare nondisclosure where he is under no duty to speak.”[18] Henshaw v. Cabeceiras, 14 Mass.App.Ct. 225, 227 (1982), rev. denied, 387 Mass. 1103 (1982), citing Swinton v. Whitinsville Sav. Bank, 311 Mass. 677, 678-79 (1942). Thus, even assuming arguendo that the Bank had knowledge of TCE contamination in the neighborhood and that this information was material, absent any evidence that the Bank prevented the Urmans from discovering this fact,[19] the Bank had no duty to disclose the existence of the contamination to the Urmans. Henshaw, supra at 227. Thus, the Bank is properly entitled to summary judgment on the plaintiffs’ fraud and deceit claim.
III. Violation of Chapter 93A
The Bank asserts that it is entitled to summary judgment on the Urmans’ G.L.c. 93A claim because the Bank made no affirmative representations regarding the TCE during the course of its transaction with the Urmans. The Urmans contend that the Bank is liable under G.L.c. 93A for its failure to disclose its alleged knowledge of the contamination in the neighborhood.
Attorney General’s Regulation 940 CMR §3.16(2) provides, in relevant part, that it is a violation of G.L.c. 93A if “(a]ny person . . . fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction.” To recover under this regulation, the plaintiffs must show (1) that the Bank knew the property was contaminated; (2) that the contamination was a material circumstance which would have led the plaintiffs not to purchase the property; and (3) that the Bank failed to disclose the problem. Sheehy v. Lipton Industries, Inc., 24 Mass.App.Ct. 188, 195 (1987) (emphasis added).
The Urmans urge this court to conclude that the contamination found in other parts of the Urmans’ neighborhood, as a matter of law, constitutes a material circumstance pursuant to 940 CMR §3.16 (2). For the reasons which follow, the court declines to do so.
*126 While the plaintiff has cited several cases where the courts have found that a seller’s failure to close a defect on the property violates G.L.c. 93A, there is an enormous distinction between the cases cited and the case at bar. see Heller v. Silverbranch Constr. Corp., 376 Mass. 621 (1978) (company’s failure to disclose a drainage problem violates G.L.c. 93A); Grossman v. WalthamChem Co., 14Mass.App.Ct. 932 (1982) (failure to disclose insect infestation in inspection report); Mongeauv. Boutelle, 10 Mass.App.Ct. 246 (1980) (broker failed to disclose property encumbrances to buyer); Homsi v. C.H. Babb Co., Inc., 10 Mass.App.Ct. 474 (1980) (seller’s failure to disclose unavailability of gas for ovens is deceptive); Sargent v. Koulisas, 29 Mass.App.Ct. 956 (1990) (seller of pizza business liable to buyer for failing to disclose poor condition of equipment); Schwartz v. Rose, 418 Mass. 41,44 (1994) (seller’s failure to disclose a letter from the Conservation Commission detailing the existence of wetlands on the property and requiring the owner to seek permission from the Commission prior to any alteration of the land constitutes violation of G.L.c. 93A). In each of the aforementioned cases, the seller failed to disclose the existence of an actual defect on the property. In the case at bar, the Urmans do not, and cannot, allege that there are any actual defects on their property.[20] Rather, the essence of the Urmans’ claim is that they bought into a bad neighborhood and that there is avague, undocumented[21] possibility that TCE may somehow seep into their property in the future.
The Urmans have not offered, nor has the court located, any authority which has held that such a precarious grievance constitutes a material circumstance which renders a seller liable under G.L.c. 93A for failing to disclose it. In fact, if the court did impose G.L.c. 93A liability on the Bank, the court would be creating a dangerous precedent whereby buyers could bring actions against sellers for an endless number of defects in the neighborhood, even though their own property was unimpaired. For example, a buyer could similarly assert that the seller’s failure to disclose the existence of gang activity in the neighborhood or the uncleanliness of a next-door neighbor or the prominence of raccoons in the area or the death of the former owner from a contagious disease or the proximity of an ex-convict,[22] among other things, constitute material circumstances justifying the imposition of G.L.c. 93A liability.
The courts have not previously imposed liability on a seller unless his failure to disclose related to an actual defect on the property. This court similarly declines to expand the seller’s duty under G.L.c. 93A by imposing an additional duty to disclose neighborhood deficiencies and other amorphous conditions which may render property subjectively undesirable. Thus, the court concludes that in the absence of a showing that the Urmans’ own property is defective, the Bank is entitled to summary judgment on the G.L.c. 93A claim.
ORDER
For the foregoing reasons, the Defendant South Boston Saving Bank’s Motion for Summary Judgment is ALLOWED. The Plaintiffs Pete and Victoria Urman’s Motion for Partial Summary Judgment is DENIED.

 Plaintiffs also bring counts for restitution and rescission. As the defendant contends, restitution and rescission are not causes of actions, but remedies. Thus, the court need only address the substantive counts of plaintiffs’ action.

Carens purchased the property on May 24, 1988, with the help of a mortgage loan from the Bank. Carens occupied the property as his principal residence from the time of the purchase until about September 14, 1990 when the Bank foreclosed the mortgage.

At all relevant times, the Urmans represented to the Bank that they intended to occupy the Property as their principal residence.

The “Crescent Road Site” consists of approximately 21 acres in Needham, Massachusetts including the Microwave Development Laboratories, Inc. (“MDL’j property at 101-145 Crescent Road, the properties on either side of Crescent Road, the Hillside Elementary School and playground on Glen Gary Road, the Rosemary Meadow and Brook located near the Hillside Elementary School, and the residential properties on Hasenfus Circle.

CE is a toxic chemical which, at high doses, “has been reported to produce liver, kidney, heart, and respiratory system damage and central nervous system disturbances.” Marshall Sittig, Handbook of Toxic and Hazardous Chemicals and Carcinogens, Second Edition, Noyes Publications, Parkridge, New Jersey (1985).

According to DEP records, the toxic contamination originated at the MDL property and travelled downhill under Hasenfus Circle to the Hillside Elementary School.

The subject property was the only property the Bank had foreclosed on and taken title to in Needham. (O’Keefe Affidavit, 111.)

In his deposition, Carens testified that he told the bank about the existence of “toxic waste or hazardous waste or things like that,” but he doubted if he used the term “TCE.” (Carens Depo., p. 31.)

No corrective measures were proposed or suggested by the DEP for the subject Property.

 The Urmans have not established that their property values, or other property values in the neighborhood, have diminished since their purchase of the property.

The Urmans submit a letter from Dr. Daniel Naiman in which he states that Mrs. Urman reported suffering from headaches and nausea. Dr. Naiman states that “Mr. Urman reposted anhedonia, irritability, anger and sense of foreshortened future for him and his family.” Dr. Naiman opines that the Urmans’ current difficulties result from adjustment disorder with mixed emotional figures. Dr. Naiman ruled out TCE-induced organic brain syndrome in Mrs. Urman’s case.
The Urmans also submit a report from Dr. Paul Ossen of New England Independent Medical Exams, Inc. Dr. Ossen states that it is difficult for him to appreciate any relationship between Mr. and Mrs. Urman’s symptoms and any TCE contamination. In regard to Mrs. Urman, Dr. Ossen opined that she was anxious, “but a thorough psychiatric session which persisted for a full year resulted in a diagnosis of ‘adjustment disorder with mixed emotional features.’ ”

Cancerphobia, a type of emotional distress, is compensable in other jurisdictions. Hagerty v. L.L. Marine Services, Inc., 788 F.2d 315 (5th Cir. 1986); Sterling v. VelsicolChemical Corp., 647 F.Supp. 303 (W.D. Term. 1986).

The Restatement (Second) of Torts §538 states in relevant part,
(2) The matter is material if
(a) a reasonable man would attach importance to its existence or nonexistence is determining his choice of action: or
(b) the maker of the misrepresentation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it.

Further, the Urmans bought the house for $175,000 when the “asking price” of the property was $240,000, which suggests that they received a “good deal.” The Urmans also received substantial financing from the Bank.

The issue of materiality will be discussed more fully in the G.L.c. 93A section of this opinion.

A seller may only be liable for fraud when the defendant had knowledge, or should have known of the defect, and where a direct relationship existed between the parties. Law-ton v. Dracousis, 14 Mass.App.Ct. 164, 171 (1982), app. denied 387 Mass. 1103 (1982).
The evidence which documents the Bank’s knowledge of the contamination is (1) a Bank account card entry and (2) Carens’ affidavit. The Bank account card entry, dated January 16, 1990, states:
Carens phoned claims has no job no income [sic] and no prospects for selling the unit — Unit is located in same neighborhood as school that is having hazardous waste problem that is affecting marketability — Does not know how able to pay asking price for unit $240,000.00.
In Carens’ affidavit, he states that,
I told [the Bank] I was trying hard to sell the Property and I was having no luck because of the toxic contamination problem and the School closing fifty yards from the Property. Both Paul and Don knew that the School was closed and knew about the TCE contamination problem. (Carens Affidavit, ¶18.)
In Carens’ deposition, he states that while he told the Bank that there was “probably toxic waste or hazardous waste or things like that,” he doubted whether he had ever used the term ‘TCE.” (Carens Depo., p. 31.) Moreover, Carens admits that he never told the Bank about the DEP testing. (Carens Depo., p. 34.)

The Urmans have not established that the parties dealt at anything but arm’s length.

There is no suggestion that the Bank “made a partial disclosure or stated a half truth which may be tantamount, under certain conditions, to a falsehood if there is no further expatiation.” Net v. Boston Survey Consultants, Inc., 388 Mass. 320, 322 (1983).

Indeed, in their submissions, the Urmans allege that knowledge of the contamination was well documented in the media.

The DEP tests establish that the TCE level in the Urmans’ property is safe.

The Urmans have failed to demonstrate any likelihood, through expert opinion or otherwise, that the house may become TCE-contaminated in the future.

Each of these scenarios would similarly create a bad aura surrounding the buyer’s property and, arguably, also decrease the marketability of the property. Furthermore, a buyer could successfully argue that, if he knew of the presence of any of these scenarios prior to his purchase of the property, he would not have purchased the home.