NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

23-P-136                                        Appeals Court

THERESA DeROSA  vs.  LENOX FARMS LIMITED PARTNERSHIP.

No. 23-P-136.

Norfolk.     October 4, 2023. – August 2, 2024.

Present:  Rubin, Singh, & Hershfang, JJ.

Negligence.  Landlord and Tenant, Habitability, Quiet enjoyment,
     Consumer protection.  Contract, Performance and breach.
     Consumer Protection Act, Landlord and tenant.  Evidence,
     Expert opinion.  Practice, Civil, Summary judgment.

Civil action commenced in the Superior Court Department on
August 27, 2020.

The case was heard by Joseph F. Leighton, Jr., J., on a
motion for summary judgment, and a motion for reconsideration
was considered by him.

Melissa J. Bruno for the plaintiff.
Gayatri R. Deodhar for the defendant.

RUBIN, J.  This appeal arises from an award of summary

judgment to the defendant.  See Mass. R. Civ. P. 56, 365 Mass.

824 (1974).  As relevant here, the plaintiff brought claims for

negligence, breach of the implied warranty of habitability,

breach of the covenant of quiet enjoyment, breach of contract, and violation of G. L. c. 93A, against her former landlord, premised on her contention that the townhouse she rented from the landlord contained harmful, airborne mold that negatively affected her health.  Because the record evidence was sufficient with respect to these claims to raise genuine issues of material fact, we reverse.

Facts.  Our review of an allowance of summary judgment is de novo.  Blake v. Hometown Am. Communities, Inc., 486 Mass. 268, 272 (2020).  We must view the record evidence, and all reasonable inferences that can be drawn therefrom, in the light most favorable to the nonmoving party.  Id.  Summary judgment is appropriate only where, viewing the record in that light, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002).

Viewing the record evidence, and all reasonable inferences that can be drawn therefrom in the light most favorable to the nonmoving party, here the plaintiff, see Blake, 486 Mass. at 272, the facts we must assume are true for present purposes include the following.[1]

---

[1] We express no opinion on any question of fact that is disputed, as many of these are.

Prior to entering a lease for a townhouse with the defendant, Lenox Farms Limited Partnership (Lenox), the plaintiff, Theresa DeRosa, a diagnosed asthmatic, informed Lenox that she "had allergies to dust, dust mites, [and] mold." She expressed particular concern with whether the carpet in the apartment was hypoallergenic. She was assured that it was before entering into the lease on November 29, 2018. The lease began the next day, November 30, and expired March 29, 2020.

A few days after moving into the townhouse, she began having difficulty breathing. She also experienced dripping from her eyes and sinus pressure, and had puffy and watery eyes. By December 2018, she began seeking medical treatment for ongoing symptoms that included recurrent sinusitis, rhinitis, and postnasal drip.

In January 2019, the plaintiff presented to urgent care for sinus congestion and earache. On two additional occasions that same month, she again went to urgent care due to ongoing sinus issues, earache, and related ailments. On January 28, 2019, she presented to the Massachusetts Eye and Ear Otolaryngology office for further medical evaluation.

On February 5, 2019, she sent an e-mail message to Lenox regarding its assurances that she would be provided with paperwork confirming that the carpet was hypoallergenic, which she had to provide to her otolaryngologist in connection with

allergy testing. She stated that since moving into the townhouse two months prior, she had been sick and having sinus infections with watery eyes.

On February 8, 2019, she learned from Lenox's community director that the carpet was not, in fact, marketed as hypoallergenic, although the community director opined that it was "indeed hypoallergenic." On February 26, 2019, her treating otolaryngologist submitted a form to Lenox requesting as a reasonable accommodation the removal of the carpeting from the townhouse. On February 27, 2019, DeRosa informed Lenox that she had been out of town and traveling abroad, and that during this time, her sinus issues had cleared up and her eye swelling had gone down.

These symptoms returned, however, immediately upon her return to the townhouse in March 2019. Her otolaryngologist recommended that she see an allergist, and on March 21, 2019, she presented to Dr. Michael Young of South Shore Allergy and Asthma Specialists, P.C. Among other things, Dr. Young's records state that DeRosa's skin tests were positive for aspergillus mold. Dr. Young completed a second reasonable accommodation request form stating that DeRosa had asthma that was triggered by her allergy to mold and that it is a potentially life-threatening condition. He stated that removal of the wall-to-wall carpeting would "remove a major source of

mold in her living environment." He indicated that he would be willing to testify in court concerning the information provided on the form.

On April 1, 2019, DeRosa presented to Dr. Young's office on an emergency basis. She stated that despite using prescribed medications and inhalers, she was still experiencing postnasal drip and cough. She reported that in the past four weeks, her asthma had kept her from getting much of her work done "[m]ost of the time." Dr. Young's assessment of DeRosa was asthma with acute exacerbation and allergic rhinitis due to allergen.

Later that month, Lenox removed the carpeting from the townhouse and replaced it with hardwood flooring. Nonetheless, DeRosa continued to experience physical symptoms without relief in the townhouse. In June 2019, DeRosa presented Lenox with a letter from Dr. Young stating that mold allergy, as documented by testing, was "a component of [DeRosa's] problems" and stating "it [was] medically necessary that she avoid any mold in her living environment." Around the same time, DeRosa informed Lenox that with the carpet now removed, she could see that when it rained heavily, water would run under the French door into the master bedroom. In response, Lenox installed a "sweep" on the bottom of the door. At that time, following the water incursion, Lenox did not check for moisture under the flooring

or otherwise test for mold.  A moisture test was not performed until November 2019.

Despite changes in, and increases to, DeRosa's prescribed medications, her symptoms remained and her overall condition worsened.  Eventually, having exhausted all possible medical solutions, Dr. Young recommended that she move from the townhouse.  He suggested that she might have airborne mold in her townhouse and recommended that she have it tested.

On October 28, 2019, DeRosa submitted to Lenox another medical letter from Dr. Young, stating that he had exhausted every possible medication and treatment for the mold allergies she was experiencing and that the townhouse was not a healthy environment for her to live in.  Dr. Young further stated that despite the implementation of extensive environmental controls, DeRosa's severe symptoms had not improved.  He asserted that it was medically necessary, given DeRosa's high level of medication use, and her failure to respond, for her to change her living environment.  After submitting Dr. Young's letter, DeRosa expressed her concern to Lenox that water had been pouring into the bedroom for an undetermined period of time, hidden by the previous carpet, and that mold had grown under the bedroom floor or in other areas of the townhouse.

On November 21, 2019, Dave Jenson of Mold Spotters, a mold inspection and testing company retained by DeRosa, tested the

townhouse for any mold or other contaminants.  The mold analysis conducted on the samples from the townhouse by an independent laboratory established that there were elevated mold conditions in the townhouse and that it was in need of mold remediation.

On November 25, 2019, DeRosa contacted Lenox, stating that on doctor's orders, she had vacated the townhouse on November 23, 2019, approximately four months before the lease expired. Lenox responded the same day, stating that DeRosa had not provided sufficient notice to break her lease and that she would incur additional charges due to that fact.  DeRosa immediately rebutted Lenox's insufficient notice charge by pointing out that in October 2019, she had provided Lenox with Dr. Young's letter stating that vacation of the townhouse was medically necessary.

In December 2019, Dr. Young provided a letter to Lenox stating that since DeRosa's move, she had experienced a resolution of all her asthma and allergy symptoms and that she had since tapered off all of her asthma and allergy medications. He verified that he had reviewed the mold analysis and that it "showed high levels of penicillium and aspergillus mold."  He stated that DeRosa's clinical response to her changed environment supported the validity of her changing her housing due to medical necessity.

Discussion.  As noted above, the plaintiff brought claims for negligence, breach of the implied warranty of habitability,

breach of the covenant of quiet enjoyment, breach of contract, and violation of G. L. c. 93A, premised on her contention that the townhouse contained harmful, airborne mold that negatively affected her health.[2]

The motion judge concluded that the presence of harmful mold and its impact upon the plaintiff were matters "beyond the common knowledge or understanding of the lay juror," Commonwealth v. Bundy, 465 Mass. 538, 546 (2013) (citation omitted), and therefore that proving them would require expert testimony. See Commonwealth v. Bankert, 103 Mass. App. Ct. 107, 120 (2023). He concluded that because the plaintiff had failed to serve expert disclosures in the case, all these claims, being mold-based, necessarily failed.[3]

This was not a proper basis for allowing the motion for summary judgment. Lenox's motion was not one seeking sanctions for violation of Rule 30B of the Rules of the Superior Court (2021), which sets out the information that must be disclosed, including the names and the proposed testimony, with respect to

---

[2] She also brought a security deposit claim alleging a violation of G. L. c. 186, § 15B. Following DeRosa's acceptance of Lenox's offer of judgment in full settlement of the claim, a separate judgment entered on that count, from which there has been no appeal, and which is not at issue here.

[3] The judge subsequently denied DeRosa's motion for reconsideration of his decision without a hearing.

any expert witnesses to be called at trial.  The sanction for a violation of that rule does not include dismissal of an action. See rule 30B(a).[4]  Moreover, Lenox was certainly on notice that Dr. Young was DeRosa's treating physician, a specialist in asthma and allergies, and that Dr. Young had indicated a willingness to testify in the case; indeed, it had subpoenaed DeRosa's medical records from Dr. Young.

The judge reasoned in the alternative that Dr. Young was not qualified to opine as an expert on the presence of airborne mold, and that, if he were, his assertions regarding the presence of mold were based on speculation.  To the extent that Dr. Young relied on the mold testing commissioned by DeRosa, the judge concluded that DeRosa had neither shown that the method used by the mold testing company was reliable, nor that the person conducting the testing was qualified to provide an opinion on the presence of airborne mold.  This, too, was not a proper basis for allowing the motion for summary judgment.

The letters from Dr. Young, DeRosa's medical records, and the mold report are part of the record on summary judgment.  To begin with, the letters from Dr. Young indicate that he is an

---

[4] Rule 30B(a) provides:  "A party who fails to comply substantially with the terms of this Rule shall not have the right to call an expert at trial, but the court in its discretion may permit that party to do so upon such additional terms, if any, that the court may require."

allergy and asthma specialist and a diplomate of the American Board of Allergy and Immunology.  Even assuming expert evidence is required at all in a case like this, viewing the evidence and all the reasonable inferences that may be drawn therefrom in the light most favorable to the plaintiff, it can be inferred that such a doctor might be qualified to conclude, even without mold testing, that a patient with a medical history and presentation like that of DeRosa was living in an environment in which mold was present.  Because Lenox raised no challenge to the doctor's qualifications, there was no voir dire or ruling with respect to them.  DeRosa's allergy tests showed, among other things, that she was allergic to aspergillus mold, and she had symptoms that abated when she was not staying in the townhouse.  Whether this is a reliable method for determining the presence of mold might be raised as a question under Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), and Commonwealth v. Lanigan, 419 Mass. 15 (1994).  But, again, this was a motion for summary judgment; in the absence of a Daubert-Lanigan motion, DeRosa had no opportunity to defend the admissibility of this evidence against such a challenge.  See Molly A. v. Commissioner of the Dep't of Mental Retardation, 69 Mass. App. Ct. 267, 284 n.24 (2007).  "[A]t the junction where Daubert intersects with summary judgment practice, Daubert is accessible, but courts must be cautious -- except when defects are obvious on the face

of a proffer -- not to exclude debatable scientific evidence without according the proponent of the evidence adequate opportunity to defend its admissibility."  Cortés-Irizarry v. Corporación Insular de Seguros, 111 F.3d 184, 188 (1st Cir. 1997).

Dr. Young's December 2019 letter also repeated the conclusion of the mold expert regarding the presence of mold in the townhouse, and the mold analyst's complete report is also in the summary judgment record.  The mold report states that the inspector conducted a visual inspection, which includes taking moisture and humidity readings, and collected samples (four air samples and two surface samples) for laboratory analysis, which revealed the elevated level of mold spores.  In any event, again, the reliability of this evidence is a Daubert-Lanigan issue, and no challenge was made on this ground.

"The duty of a trial judge . . . on a motion for summary judgment is not to conduct a 'trial by affidavits' (or other supporting materials), but to 'determine whether there is a substantial issue of fact'" (quotation and citation omitted). Henshaw v. Cabeceiras, 14 Mass. App. Ct. 225, 229 (1982).  The evidence in the summary judgment record suffices to raise genuine issues of material fact, sufficient to defeat Lenox's motion for summary judgment, whether there was mold in the apartment and whether it caused DeRosa's symptoms.  Indeed, the

inference that there was mold in the apartment and that it caused DeRosa's symptoms appears obvious from the evidence, even without the mold testing report (which, again, was part of the record on summary judgment).

In light of our conclusion, we need not address DeRosa's appeal of the denial of her motion for reconsideration.  The summary judgment dismissing counts I, II, III, V, and VI of the complaint and the order denying DeRosa's motion for reconsideration are reversed.

<u>So ordered</u>.